## In re RBGSC INVESTMENT CORP., Debtor.

**Red Bell Brewing Company and Red Bell Brewery and Pub Company – Headhouse, Inc., Plaintiffs,**

v.

**GS Capital, L.P., Bella's Place, Inc., RBGSC Investment Corp., and Nick Sommaripa, Defendants.**

**Bankruptcy No. 99–31799DAS. Adversary No. 99–0892.**

United States Bankruptcy Court, E.D. Pennsylvania, Philadelphia Division.

Jan. 20, 2000.

Walter Weir, Jr., Weir & Partners, Philadelphia, PA, for debtors.

Michael T. Farrell, Post & Schell, P.C., Philadelphia, PA, Kevin J. Carey, PA, for Red Bell entities.

Paul B. Maschmeyer, Ciardi, Maschmeyer & Karalis, PC, Philadelphia, PA, for Creditors' Committee.

Kenneth E. Aaron, Buchanan Ingersoll, P.C., Philadelphia, PA, for GS Capital, L.P.

David B. Smith, Philadelphia, PA, for Bella's Place, Inc. and Nick Sommaripa.

George E. Pallas, Cohen, Seglias, Pallas & Greenhall, P.C., Philadelphia, PA, for Debtor in Common Pleas Action.

Jeffrey Meyers, Philadelphia, PA, for Marketplace Redwood, L.P.

Joseph A. Dworetsky, Philadelphia, PA, for Headhouse Retail Associates, L.P.

Joseph DiGiuseppe, Philadelphia, PA, for City of Philadelphia.

Frederic Baker, Philadelphia, PA, Ass't U.S. Trustee.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

On January 7, 2000, the Plaintiffs filed a motion ("the Motion"), presumably pursuant to Federal Rule of Bankruptcy Procedure 9023, incorporating Federal Rule of Civil Procedure 59(e), accurately pointing out that our Opinion presently reported only at 242 B.R. 851 (Bankr.E.D.Pa.2000) ("*RBGSC II* "), erroneously failed to recognize that the Management Agreement of May 20, 1998 ("the 1st MA"), referenced *id.* at 854–55, was superseded by an amended Management Agreement of December 10, 1998 ("the 2nd MA"), executed in connection with the Settlement Agreement of December 10, 1998. *See In re RBGSC Investment Corp.*, 240 B.R. 536, 538, 540–42 (Bankr.E.D.Pa.1999) ("*RBGSC I* ") (correctly referencing the 2nd MA in allowing the Debtor to reject that contract).

The only relevant distinctions which we can discern between the 1st MA and the 2nd MA are as follows: (1) the parties to the 2nd MA include Plaintiff RED BELL BREWERY AND PUB COMPANY-HEADHOUSE, INC. ("RBHH") in place of Defendant BELLA'S PLACE, INC. ("BP"); and (2) the 2nd MA adds to the list of grounds for termination for cause

the event that [RBHH] or its affiliate Red Bell Brewing Company, Inc. [("RBBC")] is in bankruptcy or is otherwise insolvent.

The first distinction renders inaccurate the conclusion that the Plaintiffs have no rights under the 2nd MA appearing in *RBGSC II*, at 861–62 The second distinction renders the observation that RBHH's or RBBC's insolvency in general is not a ground for termination of the 2nd MA inaccurate. *Id.* at 863–64.

The distinctions do not change our determination in *RBGSC II* that the Debtor was entitled to treat the 2nd MA as terminated due to its rejection of this executory contract. *Id.* at 862. It would also not change our decision there that, since the Headhouse Site facility has never opened for business, for reasons attributable at least in part to the Plaintiffs' own actions, no management fees or incentive management fees can be claimed by RBHH under the 2nd MA. *Id.*

The Plaintiffs apparently believe that these rulings do not foreclose their arguing that the 2nd MA was wrongfully terminated and that other damages in addition to Specific performance and unpaid management fees are not foreclosed. This is, however, a difficult argument to make when, due in large part to the collapse of the relationships between the Plaintiffs and the Debtor, the Debtor was allowed, by our Order of January 6, 2000, entered when the Plaintiffs were unable to muster an offer as equally acceptable to the Headhouse Site landlord as that of the proposed and ultimately successful purchaser, to sell its rights in the Headhouse Site for a sum slightly less then the total investment by the Debtor and its affiliates, notably GS Capital, L.P., in the venture.

We also note that, because the Plaintiffs' insolvency would be a valid ground for termination of the 2nd MA, we would be inclined, if necessary, to revisit the issue of the termination of the 2nd MA. It was only "[i]n light of the very slight practical effect of this decision" that we were "inclined to conclude that the Defendants have not met their burden of proving the Plaintiffs insolvency," the evidence being "at least ambivalent" on that point. *RBGSC II*, at 862.

We also note that the Plaintiffs' proof of claim arguably asserts such "lost opportu-

nity costs," particularly in paragraph six thereof, and the Complaint in this proceeding arguably does so in Count IX. However, on January 2000, we estimated the Plaintiffs' claim at zero (0).[1]

Under all of the circumstances, this estimate continues to appear to be accurate. Therefore, it does not appear that our error changed the result in *RBGSC II* or any other aspect of this case in any way. Consequently, our accompanying order, while granting the Motion insofar as it seeks to correct inaccuracies in the *RBGSC II,* Opinion, declines the Plaintiffs' request to modify the Order accompanying that Opinion or any other Order in this case or the proceeding, for reasons stated herein.

The Order also reschedules the Confirmation hearing on January 26, 2000, to attempt to resolve a dispute between the Debtor and the Headhouse Site landlord over a provision of the Debtor's otherwise confirmable Modified Plan of Reorganization.

## ORDER

AND NOW, this *** day of January, 2000, upon consideration of the Plaintiffs' Motion for Reconsideration of Order dated January 5, 2000 ("the Motion") and the Confirmation hearing to consider the Debtor's Modified Plan of Reorganization ("the Plan") on January 12, 2000, it is hereby ORDERED and DECREED as follows:

1. The Motion is GRANTED insofar as it notes error in the reference to the parties' Management Agreement in the Opinion of January 5, 2000, accompanying the Order of that date.

2. Nevertheless, the Motion is DENIED insofar as it seeks to have us modify the Order of January 5, 2000, accompanying that Opinion or any other Order in this main bankruptcy case or adversary proceeding.

---

1. The Motion did not claim that our error had any effect on our analysis of the Licensing

3. After review of correspondence from counsel for the Debtor and Headhouse Retail Associates, Inc. ("HH"), the court, being unable to determine the revisions to the Plan to which the Debtor and HH agreed, and in order to resolve that dispute, will hear argument and, if necessary, take relevant testimony from these parties to determine how the revisions to the Plan should be phrased, on

WEDNESDAY, JANUARY 26, 2000, AT 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.

and Consulting Agreement of May 20, 1998, involving the Airport Site formality.