**In re RBGSC INVESTMENT CORPORATION.**

**No. CIV.A.00–2201.**

United States District Court, E.D. Pennsylvania.

Oct. 3, 2000.

**24.** Having so found, we need not consider Appellees' contention that various doctrines of mootness bar our review here.

Walter Weir, Jr., Bonnie R. Golub, Weir and Partners, Philadelphia, PA, for debtor.

Michael T. Farrell, Post and Schell, P.C., Philadelphia, PA, for appellants.

Paul B. Maschmeyer, Philadelphia, PA, for creditor.

Kenneth E. Aaron, Jami B. Nimeroff, Buchanan, Ingersoll Professional Corporation, David B. Smith, Philadelphia, PA, for Interested Parties.

Frederic J. Baker, Philadelphia, PA, United States Trustee.

## MEMORANDUM

DALZELL, District Judge.

We here consider another appeal from an order of the United States Bankruptcy

Court for the Eastern District of Pennsylvania associated with Bankruptcy No. 99–31799DAS, this one entered in Adversary No. 99–892 in that proceeding.

## I. *Background*

### A. *Facts*

This appeal, and indeed the entire bankruptcy from which it stems, arises from a sophisticated set of contractual arrangements a group of business entities entered into to build and operate two brew pubs: one to be located at the Philadelphia International Airport, and one to be located at the Reading Terminal Headhouse in Center City Philadelphia. The Debtor in this case, RBGSC Investment Corporation, was a joint venture formed by, *inter alia*, GS Capital, L.P., a venture capital entity, to own brew pubs Red Bell Brewing Company ("Red Bell"), a brewing concern, would manage.

We will not attempt here to recapitulate all of the complex history of the business relationships among these entities, and instead refer for additional background to the descriptions laid out in the four published opinions of the Bankruptcy Court issued in this case: *In re RBGSC Inv. Corp.*, 240 B.R. 536 (Bankr.E.D.Pa.1999) ("*RBGSC I*"); *In re RBGSC Inv. Corp.*, 242 B.R. 851 (Bankr.E.D.Pa.2000) ("*RBGSC II*"); *In re RBGSC Inv. Corp.*, 244 B.R. 71 (Bankr.E.D.Pa.2000) ("*RBGSC III*"); and *In re RBGSC Inv. Corp.*, 245 B.R. 807 (Bankr.E.D.Pa.2000) ("*RBGSC IV*"). We also rehearsed these facts in our September 25, 2000 Memorandum and Order, which affirmed the Bankruptcy Court's order of March 22, 2000, and we shall not repeat that rehearsal here.

### B. *Procedural Posture*

We here consider Red Bell and Red Bell Brewery and Pub Company–Headhouse's ("Red Bell–Headhouse")[1] appeal of the

Bankruptcy Court's order of November 2, 1999. This is the second of four appeals from orders entered in the RBGSC bankruptcy, as Red Bell and Red Bell–Headhouse have also appealed the orders of January 5, 2000, March 15, 2000, and March 22, 2000. We recently resolved the appeal of the March 22, 2000, which sought review of the Bankruptcy Court's refusal to dismiss the bankruptcy as having been filed in bad faith. We now return to chronological order, and address the appeal of the November 2, 1999 order.

## II. *Procedural History, the Bankruptcy Court's Order of November 5, 1999, and the Issues on Appeal*

### A. *Procedural History*

On September 16, 1999, RBGSC filed its voluntary petition of bankruptcy under Chapter 11. On September 23, 1999, it filed a motion to reject the Management Agreement dated December 10, 1998 between it and Red Bell–Headhouse under which Red Bell–Headhouse was to act as manager of the Reading Terminal Headhouse site. On September 29, 1999, RBGSC filed in Bankruptcy Court its notice of removal for *Red Bell Brewing Company et al. v. GS Capital et al.*, Court of Common Pleas, Philadelphia County, May Term 1999, No. 2759, which was then designated as Adversary No. 99–892 in the Bankruptcy Court.

On October 4, 1999 RBGSC filed its plan of reorganization, though on November 2, 1999 it filed a modified plan of reorganization with modified disclosures. On October 7, 1999, the Bankruptcy Court entered an order directing the parties to file briefs by October 12, 1999 on the issue of whether RBGSC's motion to reject the Management Agreement should be granted.

Meanwhile, the Adversary action proceeded. On October 4, 1999, RBGSC moved for relief from, and/or dissolution

---

1. Red Bell–Headhouse is an entity affiliated with Red Bell created in association with the anticipated Headhouse brew pub.

of, various orders the state court entered before the action was removed, and on October 12, 1999 RBGSC renewed that motion. Also on October 12, 1999, GS Capital, Bella's Place, Inc., and Nicholas Sommaripa—all of whom being RBGSC's co-defendants in the adversary action— filed their own motion for relief from the state court's orders. On October 15, 1999, Red Bell and Red Bell–Headhouse moved to remand the adversary action to state court, and on October 20, 1999, the Bankruptcy Court ordered a deadline of October 27, 1999 for the filing of any briefs on that issue. On November 2, 1999, Judge Scholl held a hearing on the various motions[2], and on the same day issued the opinion and order that is the subject of the instant appeal.

### B. *The Bankruptcy Court's Opinion and Order of November 2, 1999*

The opinion and order of November 2, 1999, *see RBGSC I,* 240 B.R. 536 (Bankr. E.D.Pa.1999), included three decisions. First, the Bankruptcy Court granted RBGSC's motion in the main case (99–31799DAS) to reject the Management Agreement of December 10, 1998. Second, Judge Scholl denied the motion to remand, finding that the action was a non-jury core proceeding, and, lastly, he found, with respect to the motions for relief from the state court orders, that while an order the state court entered staying the orders was void because that order was entered after the case was removed, it was, nonetheless proper to enter a similar order staying the preliminary injunction and contempt orders entered in the state action, conditioned on GS Capital's provision of an $83,000 bond.

### C. *The Issues on Appeal*

There is at the threshold a dispute between the parties as to which issues have been presented to us for review. According to the Appellants' Statement of Issues to be Presented on Appeal, there are three issues before us:

1. Whether the Bankruptcy Court erred in granting the motion by the Debtor to reject the Management Agreement of December 10, 1998, between Appellant, the Debtor, and its non-debtor affiliate, G.S. Capital, L.P.

2. Whether the Bankruptcy Court erred in denying the motion of Appellant to abstain and remand the removed action to the Philadelphia County Court of Common Pleas and, in refusing to abstain or to remand the Removed Action, including but not limited to whether the Bankruptcy Court erroneously concluded that Appellant's claims against non-debtor entities were "core", essentially claims against the Debtor, and effectively depriving Appellant of its right to jury trial in its claims against the non-debtor entities.

3. Whether the Bankruptcy Court erred in granting in part the motions by the Debtor, G.S. Capital, L.P., Bella's Place and Nick Sommaripa to strike or for equitable relief from and/or dissolution of orders from the Philadelphia County Court of Common Pleas.

Appellants' Designation of Items to Be Included in the Record on Appeal and Statement of Issues to Be Presented on Appeal at [14]-[15], Tab 5, R., Appeal of Nov. 2, 1999 Order.

In response, Appellees contend that in fact Appellants' brief on appeal only addresses the second of the three issues set forth above, and that consequently any appeal as to the other issues must be deemed waived.

 Upon a review of Appellants' brief, we find that issue number 1 noted above, concerning the rejection of the Management Agreement, is addressed nowhere in that brief; in fact, since the brief

---

**2.** Although the docket reports that such a hearing was held, the records on appeal do not contain a transcript of it.

on appeal contains *no* statement of issues on appeal[3], there is no mention whatever anywhere in Appellants' papers of the rejection of the Management Agreement. Fed. R. Bankr.P. 8010(a)(1)(E) requires that the argument section of Appellants' brief "contain the contentions of the appellant with respect to the issues presented," and "a district court may, in its discretion, deem an argument waived if it is not presented in accordance with Rule 8010," *In re Trans World Airlines, Inc.*, 145 F.3d 124, 132 (3d Cir.1998). Here, where Appellants have failed to make any argument whatever regarding the rejection of the Management Agreement, we find that this constitutes waiver of that issue on appeal.

■ We next look to whether issue number 3, regarding the Bankruptcy Court's resolution of the Appellees' motions to dissolve the state court orders, is addressed in Appellants' brief. We first note that the state court orders are at least mentioned[4] in the Appellants' brief, under the heading, "The State Court Orders Should Not Be Disturbed," Appellants' Brief at 16, Appeal of Nov. 2, 1999 Order. However, the first sentence of that section states, "The bankruptcy court also erred by failing to respect the role of the state court when it failed to remand," seeming to represent that the section contains argument regarding the Bankruptcy Court's denial of the motion to remand. The next paragraph begins, "It was, thus, fundamentally inappropriate for the bankruptcy court to deny remand in order to overturn the state court orders," Appellants' Brief at 17, again seeming to show that the argument is aimed at the remand decision. The Appellants' subsequent legal argument fails make any explicit arguments as to why the decision to stay enforcement of the state court orders was incorrect, and the cases to which the Appellants cite are inapposite to an argument against a decision to stay a state court order in an adversary proceeding that had not been remanded.[5]

Also, later on in that section, Appellants state that, "The bankruptcy court ... exceeded its mandate when it dissolved the state courts' orders," and "there is no justification ... for dissolving the state court orders," Appellants' Brief at 17 & 19.

---

3. Appellees argue that we should reject the appeal as a whole because Appellants' brief fails to contain a table of contents or a table of cases, has no statement of the basis of appellate jurisdiction, and includes no statement of issues presented and the applicable standard of review, all of which require appellate briefs pursuant to Fed. R. Bankr.P. 8010(a)(1). While we agree that the Appellants' brief fails to meet the Rule 8010(a)(1) standards, and we recognize that courts have found such a failure to constitute under some circumstances grounds for dismissal of the appeal, *see, e.g., In the Matter of Gulph Woods Corp.*, 189 B.R. 320, 323 (E.D.Pa.1995), we cannot find that Appellants' failures to meet the requirements of Rule 8010 warrant dismissal of their entire appeal.

4. In contrast to the Management Agreement which, as noted above, is not discussed at all.

5. That is, an appeal on issue number 3, to make any sense, must address the question of whether, having not remanded the state court proceedings, the Bankruptcy Court erred in staying the state court orders; if the state court action were remanded, the question of whether to stay the orders would naturally not be before the Bankruptcy Court in the first instance. Thus, to the extent that Appellants' citations do not speak to this issue, it is much harder to conclude that Appellants have in fact addressed the question in their brief. Appellants cite to *In re RCS Properties Inc.*, No. 91–15156S, 1992 WL 22190 (Bankr. E.D.Pa. Feb.3, 1992) (remanding a set of proceedings to state court); *In re Garafano*, 99 B.R. 624 (Bankr.E.D.Pa.1989) (finding that petitioner couldn't challenge in bankruptcy court the validity of a judgment lien entered against him in a previous federal District Court action); *In re Telephonics*, 85 B.R. 312 (Bkrtcy.E.D.Pa.1988) (granting partial relief from the automatic stay to permit an action against debtor to proceed in Maryland state court, but also imposing a ten-day stay following the imposition of any order by the state court on any effort to dispossess debtor of her property). As none of these cases go to the question that must be at the heart of an appeal of issue 3, we are fortified in our conclusion that the brief fails to address that issue.

While these are indeed references to the state court orders and the Bankruptcy Court's actions with respect to them, these passages seem to miss the point in that the November 2, 1999 order explicitly did *not* dissolve the state court orders, but instead imposed a stay on them pending the Bankruptcy Court's further conduct of the proceedings in the adversary action, *see RBGSC I*, 240 B.R. at 545. Similarly, Appellants argue that the Bankruptcy Court had acted wrongly because dissolution of the state court orders was improper under the reconsideration standards of Fed.R.Civ.P. 59(e), *see* Appellants' Brief at 18; again, the Bankruptcy Court did not dissolve the state court orders on November 2, 1999 but stayed them conditioned on the retention of $83,000 in security that Appellee GS Capital previously deposited.

We conclude that the Appellants' brief on appeal failed to address issue number 3 in any coherent fashion, and that, therefore, pursuant to Fed. R. Bankr.P. 8010(a)(1)(E), this issue is waived. In

their reply brief, *see* Appellants' Reply Brief at 18, Appeal of Nov. 2, 1999 Order, Appellants argue to the contrary, but to the extent that they present additional argument *there*,[6] it is too late: the point of Fed. R. Bankr.P. 8010(a)(1)(E) is to ensure that the appellants' contentions are laid out at the outset, so that the appellees can respond and the court can be properly cognizant of the parties' positions, *see, e.g., In re Gulph Woods Corp.*, 189 B.R. 320, 323 (E.D.Pa.1995) (Pollak, J.) ("Bankruptcy Rule 8010 is not only a technical or aesthetic provision, but also has a substantive function—that of providing the other parties and the court with some indication of which flaws in the appealed order or decision motivate the appeal."). Having failed to raise in its brief the issue of the Bankruptcy Court's stay of the state court orders, Appellants waived that issue.[7]

We therefore will consider only issue number 2, concerning the Bankruptcy Court's denial of the Appellants' motion to remand.

---

**6.** That portion of the reply brief contains no citations to any cases, and instead contains primarily disputes with the factual claims made in the Appellees' brief. Even were we to impute to the original Appellants' Brief the material contained in the reply brief, we would still be compelled to find that issue number 3 had been waived.

**7.** The Appellants' failure to address the issue of the stay is perhaps not surprising in light of the fact that this action essentially acted as a denial of the Appellees' motions to dissolve the state court orders; that is to say, on this issue the Appellants were largely the winners, and our review of the Bankruptcy Court's actions in this regard might actually lead to a less favorable outcome for Appellants (if we, for example, were to find that the Bankruptcy Court should have dissolved the orders). Both RBGSC and the non-debtor state court defendants (GS Capital, Bella's Place, and Nicholas Sommaripa) had filed motions seeking either reconsideration of the state court orders or their dissolution. Judge Scholl clearly gave these motions close attention, stating, "The issue of whether we should proceed to dissolve or vacate the [preliminary injunction] Order and the Contempt Order is

the most difficult issue before us," *RBGSC I*, 240 B.R. at 544. He also noted the volume of testimony pertinent to the question as well as its own review of the state court record. Of particular note in the state court record is the fact that on October 19, 1999, the state court itself entered a stay of the preliminary injunction order, though the Bankruptcy Court concluded that, as Red Bell argued, that order was void as it was entered after the state court action was removed to bankruptcy court.

In any event, Judge Scholl went on to conclude that Red Bell was in fact not entitled to an injunction in the state court action, because the injunction—which required the Appellees to maintain their relationship with Red Bell after they had already terminated the contracts—sought to alter the status quo and force specific performance of contracts. In spite of this finding, however, Judge Scholl elected not to dissolve the state court orders, as the Appellees would have had done, but instead merely stayed them pending a hearing on the merits of the adversary proceeding. We can find no error in the Bankruptcy Court's prudential decision to essentially suspend a decision on the dissolution motion in order to have a more full hearing on the facts.

**376**

### III. *Appellate Jurisdiction and the Standard of Review*

#### A. *Appellate Jurisdiction*

■ The parties also dispute whether we have appellate jurisdiction. Generally speaking, we have jurisdiction over appeals from the bankruptcy court pursuant to 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges...."). Here, however, Appellees argue that the Bankruptcy Court's order was not final, and that therefore an appeal of it would be interlocutory, which can only be done by leave of the court, *see* 28 U.S.C. § 158(a). There appears no dispute that the Appellants did not obtain leave of court prior to filing their appeal.

In particular, Appellees argue that "[a]ppeals from orders relating to remand or abstention are necessarily interlocutory, and thus, leave to appeal must first be granted for this Court to have jurisdiction," Appellees' Brief, Appeal of Nov. 2, 1999 Order at 3, and for this proposition they cite only to *In re Jackson Brook Institute*, 227 B.R. 569 (D.Me.1998). The district court in *In re Jackson Brook Institute* considered whether to hear the merits of an appeal from a bankruptcy court's decision to refuse to abstain from or remand a foreclosure action that had been removed from state court to the bankruptcy court after one of the defendants in the foreclosure action had filed for Chapter 11 bankruptcy, *see In re Jackson Brook Institute*, 227 B.R. at 572–74; the factual predicate of *In re Jackson Brook Institute* thus seems close to that faced here.

After considerable analysis, the *In re Jackson Brook Institute* court found that the bankruptcy court's order was not appealable pursuant to the "collateral order doctrine", *see In re Jackson Brook Institute*, 227 B.R. at 578–79. The court also stated, however, that "[i]t should be noted that the decision by this Court does not create a hard and fast rule that orders refusing to abstain are never appealable collateral orders," *In re Jackson Brook Institute*, 227 B.R. at 581. Thus, to the extent that Appellees have cited to that case for the proposition that appeals like that present here are never reviewable without leave of court, we find that on its own language, *In re Jackson Brook Institute* stands for no such proposition.

In any event, a review of the *In re Jackson Brook Institute* court's reasoning shows that our case is easily distinguishable and that there is reason here to grant appellate review. *In re Jackson Brook Institute* found that the order refusing to abstaining from or remand of the removed state court case met the first three requirements for appellate review of a collateral order, in that the order (1) conclusively determined, (2) an important legal issue that would not remain open after the order and (3) which was distinct from the resolution of the merits of the case, *see In re Jackson Brook Institute*, 227 B.R. at 576–78. The court found that the order failed to meet the last requirement, which is that the order be effectively unreviewable on appeal from a final judgment of the remaining issues, *see In re Jackson Brook Institute*, 227 B.R. at 578–80. In particular, the court held that the party seeking remand could appeal the failure to remand in its appeal of the final order of the bankruptcy court resolving the removed adversary action, *see In re Jackson Brook Institute*, 227 B.R. at 579–80.

In our case, though, possible appeal on review of a final order is not a ground upon which we can in justice deny review, because of the rapid fashion in which the Bankruptcy Court addressed these matters. The Bankruptcy Court in fact entered a final order in the adversary matter on March 15, 2000, *see RBGSC IV*, 245 B.R. at 807, and the Appellants' appeal of that order, now also pending before us, does not include the question of remand, *see* Designation of Contents for Inclusion in Record of Appeal and Statement of Issues on Appeal, Tab 3, R., Appeal of

March 15, 2000 Order. Since the instant appeal was pending at the time that the appeal of the March 15, 2000 order was filed, it is likely that Appellants relied on this pending appeal in considering the issues to raise in the March 15, 2000 appeal, and therefore now to find that we have no jurisdiction based upon the theory that the Appellants can raise the issue in a subsequent appeal—something we know they have not done, and therefore cannot do—would work an injustice.[8]

We therefore find that we have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158.

### B. Standard of Review

▅ In reviewing a bankruptcy court's decisions, we review its legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof, *see In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998). A "clearly erroneous" standard "is fairly stringent: 'It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data,'" *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs. Inc.*, 57 F.3d 1215, 1223 (3d Cir.1995) (quoting *Hoots v. Pennsylvania*, 703 F.2d 722, 725

(3d Cir.1983)). On the other hand, the *de novo* portion of our review extends to the bankruptcy court's application of the law to the facts, *see In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir.1999).

### IV. Analysis

We now move to address the merits of the sole issue properly before us on appeal: whether the Bankruptcy Court erred in denying Appellants' motion to abstain from or remand the removed action.

### A. The Motion Before the Bankruptcy Court [9]

On October 15, 1999, the Appellants filed a motion to a "abstain and remand removed action", *see* Motion to Abstain and. Remand Removed Action, Tab 36, R., Appeal of Nov. 2, 1999 Order. In support, the Appellants first argued that the adversary action should be remanded pursuant to 28 U.S.C. § 1452(b)[10], in support of which Appellants analyzed a seven-factor test found in *Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co.*, 130 B.R. 405, 407 (S.D.N.Y.1991) (designating those factors as (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main

---

**8.** As the court's extensive discussion in *In re Jackson Brook Institute* shows, the law surrounding the question of appellate jurisdiction over orders such as that we examine here is a somewhat complex, and may require intricate analysis. We decline to enter into a more comprehensive review and analysis than that which we have already done on the basis of Appellees' slender argument, in which they address none of the issues that the *In re Jackson Brook Institute* court contended with at length.

**9.** This section is intended to put the Bankruptcy Court's order of November 2, 1999 into context, rather than to act as an exhaustive rehearsal of the various parties' contentions. We do not discuss below, for example, either Appellees' supplemental memorandum

of law in support of removal or RBGSC's supplemental memorandum of law opposing it, both of which were filed at the invitation of the Bankruptcy Court following the hearing held on October 20, 1999. Nor, for that matter, do we discuss the various filings on the issue of remand by G.S. Capital, Bella's Place, and Nicholas Sommaripa, which did not, for the most part, contain any legal arguments with respect to remand not reflected in other briefs.

**10.** 28 U.S.C. § 1452(b) provides, in relevant part, that "the court to which such claim or cause of action [referring to actions arising in or related to a Chapter 11 proceeding] is removed may remand such claim or cause of action on any equitable ground."

bankruptcy case; (6) the existence of the right to a jury trial; (7) prejudice to the involuntarily removed defendants). Second, Appellants argued that mandatory abstention was appropriate here pursuant to 28 U.S.C. § 1334(c)(2), in support of which Appellants cited to six requirements for such abstention found in *In re Rhonda Green*, Adv. No. 90–0966S, 1991 WL 17873 at *3 (Bankr.E.D.Pa. Feb.11, 1991) (citing the requirements that (1) a timely motion is made; (2) the proceeding is based on a state law claim; (3) the proceeding is related to a case under Title 11; (4) the proceeding does not arise under Title 11; (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and (6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction).

In response, RBGSC argued, citing, *inter alia, In re Warren*, 125 B.R. 128, 130–31 (E.D.Pa.1991), that notwithstanding the equitable concerns of 28 U.S.C. § 1452(b), in this jurisdiction remand has been found proper only if the standards for abstention under 28 U.S.C. § 1334(c) are met, and further contended in that regard that the adversary action is a "core" proceeding and should not be remanded.

### B. *Arguments on Appeal*

In their brief, the Appellants appear to raise five arguments as to why the Bankruptcy Court erred and the adversary proceeding should be remanded to the state court. First, they contend Red Bell is entitled to a trial by jury, and, second, that the requirements for both remand pursuant to 28 U.S.C. § 1452(b) and for abstention pursuant to 28 U.S.C. § 1334(c) are met here. Third, they argue that the orders previously entered by the state court should not be disturbed by the Bankruptcy Court, and, fourth, that remand is demanded as a matter of comity. Lastly, Appellants urge that the bankruptcy itself was filed in bad faith.

■ We may address the last of these briefly. On October 20, 1999, the Bankruptcy Court denied the Appellants' motion to dismiss RBGSC's Chapter 11 filing on bad faith grounds. Appellants evidently renewed these arguments with respect to remand and/or the Appellees' motion to reject the Management Agreement, and in the order of November 2, 1999, the Bankruptcy Court rejected these contentions on the basis that they had been denied by the October 20, 1999 order, *see RBGSC I*, 240 B.R. at 541. Subsequently, the Appellants filed a second motion to dismiss on bad faith grounds, which the Bankruptcy Court denied in an order dated March 22, 2000. Appellants appealed the March 22 order and in our Memorandum and Order of September 25, 2000 we affirmed the Bankruptcy Court's finding that dismissal of RBGSC's bankruptcy was not warranted on bad faith grounds. Having once considered this argument, we shall not do so again, and having found no error in the Bankruptcy Court's decision that bad faith is not present here, we reject Appellants' argument that the Bankruptcy Court's decision not to remand is in error because the bankruptcy was in bad faith.

We will now proceed to address Appellants' other arguments and to review the Bankruptcy Court's order of November 2, 1999.

### C. *Basis for the Bankruptcy Court's Decision*

Our first step here, before engaging in a discussion of the Appellants' specific arguments on appeal, is to examine the nature of the Bankruptcy Court's decision not to abstain or remand, and the bases given for that decision. This is particularly significant here, as it appears that the Appellants' arguments on appeal do not directly take issue with some of the important conclusions that Judge Scholl reached in the process of making his ruling with respect to remand.

The first conclusion that Judge Scholl reached was that the adversary proceeding

was in substance a proof of claim, because it asserted claims against the Debtor, RBGSC, as well as against nondebtors, *see RBGSC I,* 240 B.R. at 543. As a result of this, Judge Scholl further concluded, the adversary proceedings were "core", *see RBGSC I,* 240 B.R. at 543. Judge Scholl went on to find that Red Bell had no right to a jury trial and held that, because of the "core" status of the adversary proceeding and the importance of that proceeding to RBGSC's reorganization, the removal of the state court proceeding was proper and remand was not appropriate, *see RBGSC I,* 240 B.R. at 543–44.

### D. *Is the Adversary Action "Core"?*

From the discussion above, it would seem that an initial question for us to consider is whether the Bankruptcy Court properly concluded that the adversary proceeding is "core". While this question was specifically mentioned in the statement of issues on appeal, the Appellants' initial brief contained no argument with respect to it, though in their reply brief Appellants do press the contention that the proceeding is not core.

> To determine whether a proceeding is [a] "core" proceeding, courts of this Circuit must consult two sources. First, a court must consult [28 U.S.C.] § 157(b). Although § 157(b) does not precisely define "core" proceedings, it nonetheless provides an illustrative list of proceedings that may be considered "core." ... Second, the court must apply this court's test for a "core" proceeding. Under that test, "a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case."

*Halper v. Halper,* 164 F.3d 830, 836 (3d Cir.1999) (citations and internal quotation marks omitted).

■■■■ 28 U.S.C. § 157(b)(2)(B) provides that "core" proceedings include "al-lowance or disallowance of claims against the estate," and an action that is rooted in a claim that may have accrued under state law against a debtor's estate prior to the bankruptcy falls under the set of proceedings provided for under 28 U.S.C. § 157(b)(2)(B), *see In re Meyertech Corp.,* 831 F.2d 410, 417–418 (3d Cir.1987). We further observe that pursuant to 28 U.S.C. § 157(b)(2)(C), counterclaims by the estate against those asserting claims are also considered "core" proceedings.

■■■■ Judge Scholl found that the adversary proceeding was in substance a proof of claim against RBGSC. We agree. In the state court complaint, the Appellants brought a variety of claims against RBGSC, including those for injunction, specific performance, defamation, and breach of various agreements, *see* Compl., Tab 6, Supplemental R., Appeal of Mar. 22, 2000 Order. While the Complaint also included non-debtors as defendants—namely, the other Appellees here—the presence of non-debtor defendants does not prevent a state court action from amounting to a proof of claim against the estate, *see, e.g., In re Labrum & Doak, LLP,* No. 98–10215DAS, 1999 WL 138875 at \*6–\*9 (Bankr.E.D.Pa. March 11, 1999). In particular, here, where the links between and among the various parties, including the state court plaintiffs and the debtor and non-debtor defendants, are so intertwined by virtue of the many agreements defining these relationships, we cannot see how Appellants' state court claims could be viewed, in the wake of the bankruptcy, as anything other than a claim on the estate.

An examination of the actual proof of claim Appellants submitted against the estate confirms this assessment. The first supporting document attached to the proof of claim is in fact the complaint from the state court action, *see* Red Bell's Proof of Claim, Tab 4, Supplemental R., Appeal of the March 15, 2000 Order.[11] This certain-

---

11. According to the Proof of Claim, the Red Bell entities had a claim of "$9,728,227.70

ly supports the idea that the state court action was in its substance a claim against the bankrupt estate and that, by extension, the state court proceeding here was a "core" proceeding for the bankruptcy.

The Appellants' arguments to the contrary—that is, that the state court proceedings were non-core—are unavailing. First, Appellants cite to, *inter alia, In re Donington,* 194 B.R. 750 (D.N.J.1996) for the proposition that "[i]t is well-settled that a breach of contract claim made prior to the petition in bankruptcy is not a core matter", Appellants' Reply Brief, Appeal of Nov. 2, 1999 Order at 15. We initially note that *In re Donington* itself makes no such sweeping claim; instead, we must look to the particulars of that case for any possible support of Appellants' position.[12] When we do so, we find that *In re Donington* is distinguishable from our case.

The state court proceedings *In re Donington* considered—and which the court found to be non-core—involved a number of claims and cross-claims among the creditors of a law firm that had filed for Chapter 11 protection. Many of the claims at issue did not involve the debtor, and thus *In re Donington* concluded, *inter alia,* that the contract claims at issue could not be said to be an integral part of the bankruptcy, *see In re Donington,* 194 B.R. at 759.

Here, as mentioned above, we face a much different situation. Appellants asserted the state court claims against RBGSC and the non-debtor defendants jointly, and consequently identifying claims from the state court complaint that are not tied to RBGSC would in itself present a daunting legal task.[13] Moreover, it cannot be said that any of the claims against RBGSC—or even against the non-debtors—are not integral to the bankruptcy, as the history both of the parties and of the transactions illustrates. RBGSC was formed specifically to hold the property leases for two brew pubs that were to be managed, at least to an extent, by Red Bell. When RBGSC's relationship with Red Bell soured, these projects were placed into jeopardy, leading to RBGSC's Chapter 11 filing.[14] That is, it is not as if Appellants' action against RBGSC relates to some small aspect of RBGSC's affairs; instead, the action goes to the heart of RBGSC's operations and financial condition. We therefore find that the circumstances *In re Donington* addressed are not commensurate with those we examine here, and that the *In re Donington* result does not convince us that we have a non-core proceeding here.[15]

In sum, then, we agree with the Bankruptcy Court's finding that the state court action here is a "core" proceeding, as it

**12.** *In re Donington* is a Magistrate's Report and Recommendation that the district court approved. Oddly, and for reasons unclear even in *In re Donington,* that case was not heard by a bankruptcy judge, *see In re Donington,* 194 B.R. at 755 n. 2.

**13.** And, importantly, one which would be co-extensive with a resolution of the merits of the disputes. Thus, even to the extent that we sought to disentangle the various claims for the purposes of the remand analysis—a task that we will not embark upon—doing so would very likely involve a complete assessment and resolution of the various claims.

**14.** In particular, and as we found in our Memorandum addressing the appeal of the

March 22, 2000 order, RBGSC was motivated to file for Chapter 11 protection when its landlord at the Airport site threatened imminent termination of RBGSC's lease, a threat that itself resulted from the dispute between RBGSC and Red Bell which had led to RBGSC's termination of its contractual relationship with Red Bell. It was exactly this termination that led to the state court action under discussion here. From this, it is apparent that the state court dispute is intimately associated with the bankruptcy.

**15.** On the "core"/"non-core" issue, Appellants also cite to *McCormick v. Kochar,* No. 99-5045, 1999 WL 1051776 (E.D.Pa., Nov.19, 1999). While *McCormick* does discuss mandatory and equitable abstention, it does not address the issue of "core" proceedings.

amounts to a claim against the bankruptcy estate.

### E. *Mandatory Abstention*

Having found no error with the Bankruptcy Court's conclusion that the state court proceeding was "core", we now move to consider whether the Bankruptcy Court was required to abstain from and remand the proceeding pursuant to 28 U.S.C. § 1334(c)(2). This statute provides that under certain circumstances, a bankruptcy court must abstain from adjudicating a dispute action commenced in state court.

■■■ There are six antecedent requirements for "mandatory" abstention to obtain. First, there must be a timely motion for abstention and (second) the proceeding must be based upon a state law cause of action. Third, the proceeding must be related to a case under Title 11 and (fourth) the proceeding must not arise under Title 11. Fifth, the action must be one that could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334, and, sixth, an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction, *see, e.g., In re Labrum & Doak,* 1999 WL 138875 at *6.

■■■ Here, we observe that while there is no dispute that items 1, 2, 3, 5, and 6 are met, the state court proceeding fails to meet the fourth requirement. As a "core" proceeding, the state court action does indeed "arise" under Title 11, and therefore a "core" proceeding is not subject to mandatory abstention, *see, e.g., In re Balcor/Morristown Ltd. Partnership v. Vector Whippany Associates,* 181 B.R. 781, 790 (D.N.J.1995), *In re Donington,* 194 B.R. at 757 (citing *Balcor*). Alternatively, some courts have given the "related to" language in the third factor a restrictive meaning, taking it to implicate only those non-core proceedings that are "merely"

"related" to the bankruptcy case, *see, e.g., In re Labrum & Doak,* 1999 WL 138875 at *6.

Irrespective of which analysis is used, the conclusion [16] is the same: the state court proceeding here, which is a "core" proceeding, is not subject to mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2). Thus, we can find no error in the Bankruptcy Court's decision not to abstain and remand the state court proceedings under this provision.

### F. *"Permissive" or "Equitable" Abstention*

Having found that this core proceeding is not subject to mandatory abstention, we next examine whether the Bankruptcy Court erred in failing to abstain from and remand the proceeding on the principles of permissive abstention.

28 U.S.C. § 1334(c)(1) provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Further, 28 U.S.C. § 1452(b) provides that "the court to which such a claim or cause of action [referring to actions arising in or related to a Chapter 11 proceeding] is removed may remand such claim or cause of action on any equitable ground."

■■■ Pursuant to these statutes, in considering whether equity requires abstention and remand, courts assess (1) the effect on the efficient administration of the bankruptcy estate, (2) the extent to which issues of state law predominate, (3) the difficulty or unsettled nature of the applicable state law, (4) comity, (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6)

---

16. And, we note, the *only* conclusion which is logical, since it would seem to make little sense first to find that a proceeding was so vital to the bankruptcy proceedings that it

warranted the designation "core" and then nonetheless to require remand of this vital proceeding to state court.

the existence of a right to a jury trial, and (7) prejudice to the involuntarily removed defendants, *see, e.g., McCormick v. Kochar*, No. 99–5045, 1999 WL 1051776 at *2 (E.D.Pa. Nov.19, 1999).

As noted above, Appellants argue that comity, the right to a jury trial, and the importance of not disturbing the state court orders—each of which appears to be contemplated as a consideration among the seven factors for permissive abstention— each militates in favor of remand *independent* of the permissive abstention doctrine. We will discuss these below, and will not rehearse that analysis here.

With respect to the other factors, Appellants argue that the adversary case will not affect the bankrupt estate because there was no need for RBGSC to declare bankruptcy. Further, Appellants argue that the adversary case is remote from the main bankruptcy and that it will face prejudice in resolving the case in the bankruptcy court.

We observe that while the Bankruptcy Court made no explicit findings with respect to permissive remand or the seven factor test noted above, Judge Scholl did state, as part of his conclusions, that remand was not appropriate "given both [the proceeding's] core status and its importance to the Debtor's reorganization," *RBGSC I*, 240 B.R. at 544. Based upon this finding, as well as our own application of the facts of this case to the law of permissive abstention, we cannot find that

permissive joinder required the Bankruptcy Court to remand this case.

As an initial matter, we note that permissive abstention is just that: "permissive." It is a doctrine that permits a court, when equity dictates, to remand a proceeding to state court. It does not serve to delineate instances where remand is mandatory.[17] In any event, an examination of the seven factors guiding the application of permissive abstention shows that equity does not require remand here.

With respect to the first and fifth factors, we have concluded above that this proceeding is a "core" proceeding. Thus, it is clear that the proceeding is quite related to the bankruptcy and also that remand would impede the efficient administration of the bankrupt estate. In this respect, too, we can find no error in the Bankruptcy Court's conclusion that the "importance" of the state court proceeding to the bankruptcy militates against remand.[18]

Regarding the second and third factors, while there appears no dispute that the state court proceedings are founded exclusively on state law, it also does not appear that any complex or novel questions of state law are presented.

With respect to prejudice to involuntarily removed defendants, any prejudice that Appellants allege would accrue to them from a denial of remand cannot go to this

17. As discussed at length above, Congress has set forth such circumstances for us, and we find no error in the Bankruptcy Court's conclusion that the adversary proceeding does not warrant mandatory abstention and remand.

18. As noted above, Appellants argue that the proceeding can't affect the bankrupt estate because the bankruptcy was not necessary in the first instance. In particular, Appellants argue that GS Capital was in fact obligated to pay the debts for construction of the Airport and Headhouse sites that were ultimately paid for by RBGSC, that therefore GS Capital will simply pay the supposed creditors of RBGSC, and that consequently the resolution of the

state court matter cannot affect the bankrupt estate.

We reject this argument for several reasons. First, the argument assumes the existence of a substantial number of other findings by the court, *e.g.*, that GS Capital is in fact obligated to pay the debts that were ascribed to RBGSC. On the thin arguments contained in the Appellants' brief, we decline even to address such a claim. Moreover, even were we to accept this argument, for the purposes of the permissive remand analysis only, the fact that there might be another entity obligated for RBGSC's debts does not mean that the state court proceedings do not affect the bankrupt estate.

factor as they are the plaintiffs, and not the defendants, in the state court action.

As it further does not appear that any of the defendants in the state court proceeding resisted remand, we thus find that at least five of the seven factors affecting the permissive abstention analysis either fail to militate for remand or in fact militate for the Bankruptcy Court to retain jurisdiction. Although, as we stated earlier, we will separately address below the questions of comity and the right to a jury trial—questions that constitute the remaining two permissive abstention factors—we may already conclude, on the basis of the fact that a majority of those seven factors are neutral or militate towards retaining jurisdiction, that the Bankruptcy Court did not err in refusing to remand the case under the permissive abstention doctrine.

### G. The Right to a Jury Trial

Appellants argue that the proceeding should be remanded because Red Bell, as a plaintiff in the state court proceeding, is entitled to a jury trial, which it would not get if the case were retained in bankruptcy court. In support of this argument, Appellants cite to In re Martin, No. 92–10840S, 1992 WL 144297 (Bankr.E.D.Pa. June 16, 1992) and In re RCS Properties, Inc., No. 91–15156S, 1992 WL 22190 (Bankr.E.D.Pa. Feb.3, 1992). On examination, however, neither of these cases compels a remand of the proceedings here.

In re Martin concerned "non-core" removed state court proceedings for which a jury demand had been made. The bankruptcy court there concluded that based on an examination of all the circumstances, including (but certainly not limited to) the presence of the jury demand, equitable grounds for remand existed pursuant to 28 U.S.C. § 1452(b), see In re Martin, 1992 WL 144297 at *2. Here, however, the proceedings are "core", and thus the decision in In re Martin, which considered non-core proceedings, cannot be dispositive, given that a "core" proceeding is much more likely to be considered both important to the efficient administration of the bankrupt estate and more related to the bankruptcy. The bankruptcy court's equitable decision in In re Martin is thus simply not commensurate with what we face here.

In re RCS concerned thirteen removed state court proceedings, none of which involving the Debtor a party, and which the court found to be non-core proceedings, see In re RCS, 1992 WL 22190 at *2. Ultimately, the court remanded the proceedings pursuant to 28 U.S.C. § 1452(b), citing in particular as grounds for this decision the court's doubt that it had jurisdiction over the proceedings at issue, a concern that stemmed from the fact that the debtor was not a party to any of these cases, see In re RCS, 1992 WL 22190 at *2. Here again, the present case bears little (if any) resemblance to In re RCS. Here, the Bankruptcy Court found, and we above have agreed, that the state court proceedings here are indeed core, and, moreover, the debtor, RBGSC, is most certainly a party to the removed case. Thus, the factors that drove the In re RCS court to remand are simply absent here.

We conclude that Appellants' argument that their right to a jury trial compels a remand here relies on cases completely inapposite to our circumstances here[19], and we therefore reject it.

### H. Comity

Appellants next argue that comity requires that the proceedings be remanded

---

19. Moreover, we cannot find in the first instance that these cases even support, necessarily, the proposition that a jury demand, or a right to a jury trial existing in state court, compels remand.

Also, in the decision below, the Bankruptcy Court itself distinguished In re Martin and In re RCS from the instant case, see RBGSC I, 240 B.R. at 542–43. We find these conclusions convincing, as Judge Scholl himself decided all three cases.

to state court. In particular, they argue that Bankruptcy Rule 9027(i)[20] and 28 U.S.C. § 1738, the Full Faith and Credit Statute, demand that the Bankruptcy Court give full effect to the orders issued by the state court in the adversary proceeding.

An immediate problem we note with respect to this argument is that it is not at all tied to the issue of remand. As noted above in our discussion of the issues properly under appeal, Appellants, in conjunction with their "comity" argument, make statements to the effect that the Bankruptcy Court wrongly granted a motion to dissolve the state court orders; as we have discussed, the Bankruptcy Court here did no such thing. At any rate, Appellants completely fail to link their assertion that the state court orders merited full faith and credit to the question of remand. This is not completely surprising, since the arguments are obviously logically distinct: even if the Bankruptcy Court retained jurisdiction, it still would have before it the question of the disposition of the state court orders.

■■■■ Leaving aside the questionable content of the Appellants' brief on this issue, we cannot find that the existence of the state court orders required the Bankruptcy Court to remand the adversary proceeding. 28 U.S.C. § 1450 contains language matching Bankruptcy Rule 9027(i), discussed in the margin above, and stating that "All injunctions, orders, and other proceedings had in [a removed] action prior to its removal shall remain in full force and effect until dissolved or modified by the [bankruptcy] court." Thus, the mere presence of orders the state court entered in a removed action in no way requires that such a case be remanded. Also, in a removed case, "[a]ny orders or rulings issued by the state court prior to removal are not conclusive in the federal action after removal," 14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3738 at 405 (3d ed.1998), and this shows further that the Bankruptcy Court had no reason to remand the case based on requirements of comity.

The character of the state court orders at issue here further demonstrates that comity does not mandate remand. At the time the Bankruptcy Court issued the November 2, 1999 order, it considered the state court preliminary injunction order dated August 12, 1999 and the contempt order entered against the non-debtor state court defendants on September 23, 1999 for their failure to meet the dictates of the August 12, 1999 order. These orders are not final orders disposing of the case, and indeed they are of a character such that the issuing court itself could have modified. It is therefore unclear how the presence of such non-final orders, in light, *inter alia*, of 28 U.S.C. § 1450, would require the Bankruptcy Court to adhere to them, much less to remand the entire case back to state court.

We therefore conclude that considerations of comity do not require that the instant adversary action be remanded to state court. We thus can find no error in the Bankruptcy Court's decision to retain jurisdiction notwithstanding the presence of the state court orders.

### I. *Disturbing the State Court Orders*

In an argument evidently closely related to the "comity" argument discussed above,

---

**20.** Rule 9027(i) is entitled "Attachment or sequestration; securities," and Appellants evidently look to the language contained in that Rule to that "All injunctions issued, orders entered and other proceedings had prior to removal shall remain in full force and effect until dissolved or modified by the [bankruptcy] court." We cannot agree that this Rule really has anything to do with comity. What this rule appears to do is to require that removal, by itself, does not serve to undo the orders or injunctions issued prior to removal by the state court. However, the Rule clearly contemplates that such orders may be "dissolved or modified" by the bankruptcy court. Thus, far from mandating that the bankruptcy court let stand all state court orders, Rule 9027(i) affirmatively endorses the possibility that the bankruptcy court may disturb those orders.

Appellants contend that the denial of remand was inappropriate since the Bankruptcy Court did so—or so the Appellants claim—in order to overturn the state court orders. Appellants maintain that only the court that entered a "judgment" should be permitted to determine whether relief from that judgment should be granted. In support of this claim, Appellants cite to *In re RCS,* 1992 WL 22190, *In re Garafano,* 99 B.R. 624 (Bankr.E.D.Pa.1989), and *In re Telephonics,* 85 B.R. 312 (Bankr. E.D.Pa.1988). An examination of these cases shows that the "judgments" considered therein were final state court judgments, not preliminary injunctions or contempt orders like those we consider here, and therefore these cases have no application to our appeal.

In any event, it again remains unclear to us exactly what connection the Appellants wish to draw between, on the one hand, the degree of deference that the Bankruptcy Court is required to give to the state court orders and, on the other, the question of remand. As we noted above, simply because the Bankruptcy Court might be required to respect a state court order entered in a removed case—a proposition that, we note, is itself dubious in light of 28 U.S.C. § 1450 and the passage from Wright & Miller quoted in the preceding section—this does not logically or legally lead to the conclusion that the Bankruptcy Court would be *required* to remand the entire case back to the state court. This questionable connection is made more problematic in a case where, as here, the order at issue is a preliminary injunction, which most definitely does not represent a binding and final finding by the state court on the merits of the case before it.

We therefore must find that concerns over the disturbance of the state court orders in no way require remand here. Again, we find no error in the Bankruptcy Court's decision to retain jurisdiction.

### V. Conclusion

We have exhaustively reviewed Appellants' various contentions regarding the alleged faults in the Bankruptcy Court's decision to deny remand of the instant adversary action and have found all of them meritless. We can find no error in the Bankruptcy Court's decision, and shall therefore affirm it.