

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-2008

# In Re: Exide Tech

Precedential or Non-Precedential: Precedential

Docket No. 07-2230

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"In Re: Exide Tech " (2008). *2008 Decisions.* Paper 436.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/436

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2230
_____

IN RE: EXIDE TECHNOLOGIES,
REORGANIZED DEBTOR


PACIFIC DUNLOP HOLDINGS (USA) INC.;
PACIFIC DUNLOP HOLDINGS (EUROPE) LIMITED;
PD INTERNATIONAL PTY LIMITED;
PACIFIC DUNLOP HOLDINGS (HONG KONG)
LIMITED;
PACIFIC DUNLOP HOLDINGS (SINGAPORE) PTE
LIMITED,

Appellants

*(Amended in accordance with the Clerk's Order dated
07/30/07)


_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 05-cv-00561)
District Judge: Honorable Sue L. Robinson

_____

Argued June 30, 2008

Before:  RENDELL, SMITH, and FISHER, <u>Circuit Judges</u>

(Filed: September 19, 2008 )

_____

Douglas N. Candeub, Esq.    **[ARGUED]**
Brett D. Fallon, Esq.
Morris James
500 Delaware Avenue, Suite 1500
P. O. Box 2306
Wilmington, DE   19899

*Counsel for Plaintiffs-Appellants*
   *Pacific Dunlop Holdings (Usa) Inc.;*
   *Pacific Dunlop Holdings (Europe) Limited;*
   *PD International PTY Limited;*
   *Pacific Dunlop Holdings (Hong Kong) Limited;*
   *Pacific Dunlop Holdings (Singapore) PTE Limited*

2

Benjamin G. Chew, Esq.    **[ARGUED]**
Andrew Zimmitti, Esq.
Patton Boggs
2550 M Street, N.W.
Washington, DC   20037

Laura D.Jones, Esq.
James E. O'Neill, Esq.
Pachulski Stang Diehl & Jones
919 North Market Street, 17th floor
P. O. Box 8705
Wilmington, DE   19801

*Counsel for Reorganized Debtor-Appellee*
  *Exide Technologies*

_____

OPINION OF THE COURT
_____


RENDELL, <u>Circuit Judge</u>.

Appellants, Pacific Dunlop Holdings (USA), Inc. ("PDH USA"), and four of its foreign affiliates, Pacific Dunlop Holdings (Europe) Limited ("PDH Europe"), P.D. International Pty Limited ("PD Int'l"), Pacific Dunlop Holdings (Hong Kong) Limited ("PDH Hong Kong"), and Pacific Dunlop Holdings

3

(Singapore) Pte. Ltd. ("PDH Singapore") (collectively, the "PDH Foreign Entities"), appeal the Bankruptcy Court's denial of their motion to remand to state court, and/or abstain from, their claims against three foreign subsidiaries of Exide Technologies, f/k/a Exide Corporation ("Exide") – namely, Exide Holding Europe ("Exide Europe"), Exide Holding Asia Pte. Limited ("Exide Asia"), and Exide Singapore Pte. Ltd., f/k/a Bluewall Pte. Ltd. ("Exide Singapore") (collectively, the "Exide Foreign Entities") – and their motion for reconsideration.

The crux of the appeal is whether the Bankruptcy Court properly decided that the state law cause of action between non-debtor parties, the PDH Foreign Entities and the Exide Foreign Entities, was a "core" bankruptcy proceeding under 28 U.S.C. §§ 157(b)(2)(B) and (C) over which exclusive bankruptcy jurisdiction was appropriate. For the reasons that follow, we conclude that the Bankruptcy Court erred and we will vacate and remand for further proceedings.

## I. Facts and Procedural History

PDH USA and PDH Foreign Entities, collectively, owned the GNB Companies ("GNB"), a global automotive and industrial battery business; each of the PDH entities owned portions of GNB in designated territories around the world. In May and June of 2000, PDH USA and the PDH Foreign Entities entered into a series of sale agreements to sell their interests in GNB to Exide and the Exide Foreign Entities. PDH USA sold

4

its interests in GNB to Exide, and each of the four PDH Foreign Entities sold its respective interests to the three Exide Foreign Entities.[1]  Separate agreements were concluded between the companies' counterparts.  Each agreement provided that "Buyer's sole and exclusive indemnification obligations under this Agreement are set forth in the Coordinating Agreement." App. 257, 286, 344, 389, 434.  On May 9, 2000, the Coordinating Agreement was concluded and, *inter alia*, set forth procedures to deal with potential disputes, including various provisions addressing venue, submission to jurisdiction, and governing law.  App. 565.  It included a forum selection clause, pursuant to which any claims arising under the agreement were to be filed in "a state or federal court located in the County of Cook, State of Illinois."  App. 582.

According to the PDH entities, after the sale's closing, Exide and the foreign entities swept GNB's cash accounts and appropriated approximately $16.6 million of cash at hand that was due to the sellers under the sales agreements.  The PDH

---

[1] PDH Singapore sold its interests to two Exide entities, entering into the India Agreement with Exide Asia and the Singapore Agreement with Exide Singapore.  PDH Hong Kong sold its interests to Exide Asia under the Hong Kong/PRC Agreement.  PDH Europe sold a portion of its GNB interests to Exide Europe under the UK Agreement and sold the remainder of its interests, jointly with  PD Int'l, to Exide Europe under the Europe Agreement.

entities reportedly asked that the cash be released to them, but the Exide entities refused all such requests.

Thus, on July 21, 2001, the PDH entities filed suit against the Exide entities in the Circuit Court of Cook County, Illinois, alleging breach of contract, unjust enrichment, and conversion.[2] The specific claims and amounts were as follows:

- PDH Singapore against Exide Asia in the amount of $396,817 for breach of contract (the India Agreement), conversion, and unjust enrichment;

- PDH Singapore against Exide Singapore in the amount of $278,446 for breach of contract (the Singapore Agreement), conversion, and unjust enrichment;

- PDH Hong Kong against Exide Asia in the amount of $791,524 for breach of

----

[2] In December 2001, PDH USA filed a second complaint solely against Exide claiming a breach of contract with respect to certain letters of credit and seeking relief in the amount of approximately $3.14 million. This was consolidated administratively with the first action but did not raise the same issues. It is not at issue here.

contract (the Hong Kong/PRC Agreement), conversion, and unjust enrichment;

- PDH Europe against Exide Europe in the amount of $6,665,051 for breach of contract (the UK Agreement), conversion, and unjust enrichment;

- PD Int'l and PDH Europe against Exide Europe in the amount of $1,788,054 for breach of contract (the European Agreement), conversion, and unjust enrichment; and

- PDH USA against Exide in the amount of approximately $6,700,000 for breach of contract (the USA Agreement), conversion, and unjust enrichment.[3]

The complaint included a demand for a jury trial.

The Exide defendants moved to dismiss the complaint on September 17, 2001 under Illinois Code of Civil Procedure Section 2-615, arguing that plaintiffs failed to state a valid cause

---

[3] This last claim is undisputedly "core" and is not at issue on appeal.

7

of action. In their motion, they asserted, *inter alia*, that the plaintiffs contractually agreed to waive the claims of breach of contract, conversion, and unjust enrichment and were only entitled to seek indemnification. Furthermore, they contended, the plaintiffs had not alleged a breach of a covenant made by "Exide," defined as Exide and the Exide Foreign Entities. The motion was subsequently denied by the Illinois trial judge overseeing the case. Accordingly, the Exide defendants filed an answer, affirmative defenses, and counterclaim on January 22, 2002. In their answer, the Exide Foreign Entities raised several defenses but did not assert that they were not proper parties to the litigation or that the exclusive remedy for breach was against Exide alone.

Discovery had just begun in the state court action when Exide and several of its domestic subsidiaries, who are not parties here, filed petitions for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware on April 15, 2002. None of the Exide Foreign Entities filed for bankruptcy, and Exide is the only defendant to the Illinois action that is involved in bankruptcy proceedings.

Recognizing that the automatic stay under 11 U.S.C. § 362(a) applied to its claims against Exide, PDH USA did not pursue them further in Illinois state court. The PDH Foreign Entities, however, continued to prosecute their claims against the non-debtor defendants. The Exide Foreign Entities consequently asked the state court to stay discovery on the

claims against them as well, which it initially did. After three hearings, however, the judge lifted the stay on July 8, 2002, holding that the stay did not apply to the non-debtor defendants and ordering that the case move forward without Exide.

The Exide Foreign Entities then filed a motion to dismiss the claims against them for lack of necessary party. Rather than wait for the state court's ruling, however, on August 21, 2002, the day before a hearing was to be held in state court on the motion to dismiss, the Exide defendants removed the action to the United States Bankruptcy Court for the Northern District of Illinois. They also moved to transfer the action to the United States Bankruptcy Court for the District of Delaware.

The PDH Foreign Entities in turn moved for remand to state court or, in the alternative, abstention. They argued that removal was improper because the claims asserted against Exide's non-debtor subsidiaries did not "arise under" the bankruptcy code or "arise in" Exide's bankruptcy case and were not "related to" the bankruptcy case as required for the court to exercise jurisdiction under 28 U.S.C. § 1334.

The Exide Foreign Entities argued that the claims were at minimum "related to" Exide's bankruptcy case and thus subject matter jurisdiction should be found to exist. The crux of their argument was that the Coordinating Agreement provided that Exide was the "sole indemnitor" and, therefore, the

9

exclusive remedy available to the PDH Foreign Entities was a direct claim against Exide, not the foreign subsidiaries.

Exide's arguments that only it had assumed indemnification obligations turned on the meaning of the term "Buyer" as used within the first phrase of Section 4.2(a) of the Coordinating Agreement, which set forth remedies available against the Exide entities under the sales agreements and provided:

Indemnification by Buyer

(a)  Subject to Sections 4.2(b), 4.2(c), and 4.2(d), Buyer agrees to indemnify and hold Seller and the International Sellers and their Affiliates harmless from and against any and all Losses and Expenses incurred by Seller or the International Sellers and their Affiliates in connection with or arising from:

(i) any breach by Buyer of any of its covenants or agreements in the Sale Agreements or in this Agreement;

(ii) any breach of any warranty or the inaccuracy of any representation by Buyer contained in the Sale Agreements, . . .; or

10

> (iii) any breach by Buyer of any covenant contained in Section 11.1 or Section 12.2 of the U.S. Agreement or the corresponding provisions in the other Sale Agreements.

App. 578-79. Under the Coordinating Agreement, PDH USA and its affiliates were "Seller" and "International Sellers," respectively. As to the buyers, the first page of the Coordinating Agreement identified "Exide Corporation" as "Buyer" and the Exide subsidiaries as "International Buyers." Under the definitional section of the Coordinating Agreement, however, the term "Buyer," as used in articles 1 and 3 to 7, inclusive, was further defined to mean "Buyer and/or (as the context may require) any International Buyer." App. 565, 567. The Coordinating Agreement used these terms throughout and was meant to "provide a single avenue of recourse for indemnification claims arising under the Sale Agreements." App. 565.

The Exide Foreign Entities took the position before the Bankruptcy Court that 4.2(a) fixed liability on Exide alone and that the Exide Foreign Entities were not named indemnitors under the agreement. According to this interpretation, the term "Buyer" in the heading to 4.2 and the opening clause of 4.2(a) means only Exide, rather than "Buyer and/or any International Buyer." More specifically, Exide claimed that Amendment No. 1, one of three lengthy amendments to the Coordinating

11

Agreement, had altered this indemnification provision and made unambiguous that it was the only proper defendant to the PDH Foreign Entities' claims. Amendment No.1 provided "Section 4.2(a)(i) is hereby amended to insert the words 'or, for the sake of clarification, any International Buyer' after the word 'Buyer' in the first line of such section." App. 745. With the new language inserted, the relevant part of the section read:

> Buyer agrees to indemnify and hold Seller and the International Sellers and their Affiliates harmless from and against any and all Losses and Expenses incurred by Seller or the International Sellers and their Affiliates in connection with or arising from:
>
> > (i) any breach by Buyer or, for the sake of clarification, any International Buyer of any of its covenants or agreements in the Sale Agreements or in this Agreement

App. 579. Because Amendment No.1 added "or, for the sake of clarification, any International Buyer" to only one subsection of 4.2(a), as the argument goes, "Buyer" in the remainder of the section cannot include international buyers.

On February 4, 2003, Judge Sonderby of the Bankruptcy Court in Illinois ruled on the Exide defendants' motion for transfer. Although she observed that "[i]t appears, from a review of the agreements and the parties' contentions, that there

12

may be an ambiguity on the indemnification issue," she did not resolve the issue. App. 660. Instead, she found "at least 'related to' jurisdiction over the removed action," App. 661, and, accordingly, transferred the action, including PDH Foreign Entities' pending motion to remand or abstain, to the United States Bankruptcy Court for the District of Delaware.[4] In the meantime, April 23, 2003 was set as the deadline for filing proofs of claim in Exide's bankruptcy case. PDH USA and each of the PDH Foreign Entities filed proofs of claim. PDH USA's proof of claim, which is not at issue on appeal, was against Exide directly. The PDH Foreign Entities' proofs of claims, by contrast, were contingent, indicating a right of recovery against Exide only if they succeeded in their action against the non-debtor defendants and they proved unable to satisfy the judgment. Typical of the PDH Foreign Entities' proofs of claim is PDH Europe's proof of claim, which indicates that it claimed "approximately $6,665,051.00, . . . from the Debtor's subsidiary, Exide Holding Europe, on the grounds set forth in a Complaint filed in Cook County, Illinois . . . ." App. 500. The proof of claim explains the background of litigation in the bankruptcy courts in both Illinois and Delaware and then continues,

> As set forth in the Memorandum Opinion [of the
> United States Bankruptcy Court for the Northern

_____

[4] Despite the transfer, the actual case files from the Illinois state court were not received in Delaware until January 14, 2004, long after a decision on the motion to remand was issued.

13

District of Illinois transferring the litigation], the parties disagree regarding the liability of the Debtor for any breaches of the sale agreements. It is PDH (Europe)'s position that Exide Holding Europe is primarily liable for its breaches, and that the Debtor is secondarily liable to the extent that Exide Holding Europe is unable to satisfy PDH (Europe). The Debtor contends that it is the sole indemnitor for breaches by it or its subsidiaries under the related sales agreements. Accordingly, if the appropriate court determines that the Debtor is the sole indemnitor, PDH (Europe) has a direct claim against the Debtor for any breaches. Conversely, if the appropriate court determines that Exide Holding Europe is primarily liable for its breaches, PDH (Europe) has a contingent claim against the Debtor, which is dependent on Exide Holding Europe's ability to satisfy PDH (Europe)'s claims.

App. 500-01.

On October 3, 2003, PDH Foreign Entities filed a renewed motion in the Delaware Bankruptcy Court for remand or abstention. In their motion, the PDH Foreign Entities argued that: (1) the forum selection clause in the parties' Coordinating Agreement compelled remand to Illinois state court; (2) the Bankruptcy Court lacked subject matter jurisdiction; (3)

14

principles of equitable remand under 11 U.S.C. § 1452(b) should be applied; and (4) mandatory abstention under 28 U.S.C. § 1334(c)(2) applied.

The Exide entities filed a response to the motion to remand arguing that, under the Coordinating Agreement, Exide should be understood to be the "sole indemnitor" of all of the PDH Foreign Entities' claims, and therefore, the PDH Foreign Entities were not entitled to any remedy against Exide Foreign Entities. The Exide entities also argued that the automatic stay under the Bankruptcy Code should be extended to PDH Foreign Entities' claims against the non-debtor Exide Foreign Entities. Under the then-existing local bankruptcy rules, PDH had no right to file a reply, unless ordered to do so by the court. Del. U.S. Bankr. Ct. L.R. 9006-1(d) (2003).

On November 19, 2003, the Delaware Bankruptcy Court held a hearing on the motion to remand. At the outset of the hearing, the judge opined as to the key issue, noting that "it's clear to me that by virtue of the filing of the Proofs of Claim that in large measure the matters before me are core." App. 49. He then continued,

> it seems to me . . . that the mandatory abstention part of the motion is one I'm going to deny for the reason that these are, at least in large measure, core, and secondly, by virtue of the filing of the Proof of Claim you've – the forum selection falls

15

away, because, as some of the cases say, once you've done that you've chosen your forum.

App. 50.

Nonetheless, the parties made their arguments. Exide's counsel asserted that the language in the Coordinating Agreement was unambiguous and clearly stated that any claims could only proceed against Exide as the sole indemnitor and, thus, should be litigated in Bankruptcy Court. In the alternative, counsel argued that the claims against the non-debtor entities and the claims against the debtor were "so inextricably intertwined that it was impossible as a practical matter to disentangle them," and urged the Court to follow *In re RBGSC Inv. Corp.*, 253 B.R. 369 (E.D. Pa. 2000), and find that the claims against the non-debtors were core. App. 87. PDH's counsel protested that the merits of the Coordinating Agreement should not be determined on a motion for remand and that they had had no opportunity to reply to Exide's merits arguments. Moreover, the claims against the non-debtor Exide entities, he argued, should be deemed non-core and, consequently, mandatory and/or discretionary abstention should apply.

At the conclusion of the hearing, the Court held:

While Judge Sonderby points out that there may be ambiguity [in the language of the Coordinating

16

Agreement], I conclude as a matter of law that there is none. And that Exide is the sole [i]ndemnitor under § 4.2 and I reach this conclusion, largely as a result of Amendment number 1, where the parties specifically chose to include language which addressed the very issue of what the buyer should mean in that subsection . . . . That's why I make that conclusion. This results in making Exide solely liable for the asserted breaches . . . .

App. 103. It, therefore, found the claims within its jurisdiction under 28 U.S.C. §§ 157(b)(2)(B) and (b)(2)(C) and determined that remand and abstention were not warranted. It requested that counsel jointly draft an order memorializing its decision.

On December 11, 2003, the order was entered and provided:

For the reasons articulated on the record on November 19, 2003, Plaintiffs' Motion is DENIED. The Court finds that Section 4.2(a) of the Coordinating Agreement as modified by Amendment No.1 of the Coordinating Agreement is unambiguous, that Debtor Exide is the sole indemnitor thereunder, and that consequently the foreign Pacific Dunlop entities have no right of recovery against the non-debtor Exide entities.

17

The Court also finds that all the claims asserted by the Plaintiffs, including those of the foreign Pacific Dunlop entities, are core proceedings to which the automatic stay applies, that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (C), that mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) is inapplicable, and that neither remand pursuant to 28 U.S.C. § 1452(b) nor discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) is warranted.

App. 23-24. The order also extended the automatic stay to the claims against the Exide Foreign Entities.

The PDH Foreign Entities subsequently filed a motion for reconsideration, urging the Court to allow them to adduce evidence to counter this interpretation of the Coordinating Agreement because they had not anticipated that the meaning of this agreement would be decided as part of their motion to remand or abstain. The Bankruptcy Court held a hearing on the motion on February 26, 2004, but did not issue a decision for approximately 18 months.

In the interim, Exide's reorganization plan was confirmed on April 20, 2004 and became effective two weeks later. Under the plan, the reorganized Exide created a new foreign subsidiary and merged Exide Europe and Exide Asia into it. PDH Foreign

18

Entities' rights against Exide Foreign Entities were not impaired by the reorganization plan. In fact, in providing for the discharge of claims against Exide, the Confirmation Order expressly stated: "excepting, however, that any claims of the Pacific Dunlop Holdings Entities against non-debtor subsidiaries of the debtors are not affected hereby." App. 1711.

More than a year after the plan was confirmed, the Bankruptcy Court denied PDH's motion for reconsideration. App. 25. The clerk's docketing of the order characterizes it as a dismissal of the PDH Foreign Entities' claims against the Exide Foreign Entities.

PDH appealed the denial of their motions to the United States District Court for the District of Delaware. At oral argument, the District Court focused largely on the PDH Foreign Entities' filing of proofs of claim and said "I think you have to choose whether you are going to try to collect against the debtor or you are going to choose to withdraw your proofs of claim and do what you say you want to do, which is just proceed against the nondebtor entity." App. 146; *see also* App. 166, 150 ("I don't think the Bankruptcy Court would have jurisdiction at all but for the [contingent] claim."). When the hearing concluded, it requested supplemental briefing on whether filing proofs of claim when there is an indemnity relationship between debtor and non-debtors gives the bankruptcy court core jurisdiction over the underlying cause of action between non-debtors.

19

On March 22, 2007, the District Court issued a memorandum order, denying the PDH Foreign Entities' appeal and affirming the orders of the Bankruptcy Court. First, it decided that the PDH Foreign Entities' four proofs of claim against Exide invoked the claims allowance process and were core proceedings.[5] Second, it agreed with the Bankruptcy Court that the Coordinating Agreement was unambiguous in its designation of Exide as the sole indemnitor. It concluded that,

> [o]nce Exide was identified as the sole indemnitor for the state claims brought by the PDH Foreign Entities against the Exide Foreign Entities, it follows that the PDH Foreign Entities, through their proofs of claim, have direct claims against the debtor and its bankruptcy estate and that the resolution of the claims through the claims process is a core proceeding subject to the jurisdiction of the bankruptcy court.

---

[5] The District Court's memorandum order referred to three PDH Foreign Entities and four total proofs of claim, including PDH USA's proof of claim. This appears to have been an oversight as there are four PDH Foreign Entities and five proofs of claim filed in total, inclusive of PDH USA's proof of claim.

App. 11-12.  In support of its conclusion, the Court cited *Pacor v. Higgins*, 743 F.2d 984, 995 (3d Cir. 1984), as representing our recognition that "a debtor's agreement to indemnify a third party gives rise to jurisdiction over nonbankrupt controversies with that third party, especially where the third party has filed a claim against the debtor."  App. 12.  PDH USA and the PDH Foreign Entities timely appealed the District Court's order.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction to hear the PDH Foreign Entities' appeal from the Bankruptcy Court's denial of their motion to remand and/or abstain and motion for reconsideration, respectively, pursuant to 28 U.S.C. § 158(a)(1). The District Court's subsequent affirmance of the Bankruptcy Court's orders on March 22, 2007 gave rise to this appeal, over which we have jurisdiction pursuant to 28 U.S.C. § 158(d)(1) and 28 U.S.C. § 1291.  We review the appeal of the ruling not to exercise mandatory abstention under 28 U.S.C. § 1334(d). *Stoe v. Flaherty*, 436 F.3d 209, 212 (3d Cir. 2006).  The consequent ruling not to remand, however, is "not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of [title 28]."  28 U.S.C. § 1452(b).

Our review of the Bankruptcy Court's orders is the same as that exercised by the District Court.  *In re Zinchiak*, 406 F.3d 214, 221-22 (3d Cir. 2005).  We review its rulings as if we were reviewing it in the first instance, and our review is plenary.  *See*

21

*Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.,* 310 F.3d 118, 121 (3d Cir. 2002); *Zinchiak*, 406 F.3d at 221-22; *In re Continental Airlines*, 203 F.3d 203, 208 (3d Cir. 2000). We, therefore, exercise plenary review of the questions of whether the claims at issue are core proceedings and whether the mandatory abstention provision of § 1334(c)(2) applies to this removed case. *Stoe*, 436 F.3d at 212. Because the District Court acted as an appellate court, our review of its decision is similarly plenary. *In re Myers*, 491 F.3d 120, 124 (3d Cir. 2007).

### III. Discussion

Bankruptcy jurisdiction extends to four types of proceedings: (1) cases "under" title 11, that is, the bankruptcy petition; (2) proceedings "arising under title 11"; (3) proceedings "arising in" a bankruptcy case; and (4) proceedings "related to" a bankruptcy case. 28 U.S.C. § 1334(b); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2005). The first three categories are "core" proceedings in which the bankruptcy court has power to hear, decide, and enter orders and judgments. 28 U.S.C. § 157(b)(1). The fourth category, "related to" proceedings, are "non-core" proceedings, which the bankruptcy court can hear, but in which it can only submit proposed findings of fact and conclusions of law to the district court, not issue orders. *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). As we have said, "a 'non-core' proceeding belongs to 'the broader universe of all proceedings that are not

22

core proceedings but are nevertheless related to a bankruptcy case.'" *Id.* at 837 (internal citations omitted). They, therefore, "need not necessarily be against the debtor or against the debtor's property," but, rather, need only be such that "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor*, 743 F.2d at 994; *see also In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 381 (3d Cir. 2002).

Whether claims are considered core or non-core proceedings dictates not only the bankruptcy court's role and powers but also the availability of mandatory abstention, *see* 28 U.S.C. § 157(b)(4), and the enforcement of forum selection clauses, *see In re Diaz Contracting, Inc.*, 817 F.2d 1047, 1051-53 (3d Cir. 1987). If the claims of the PDH Foreign Entities against the Exide Foreign Entities are merely "related to" the debtor's bankruptcy case, abstention and enforcement of the forum selection clause of the Coordinating Agreement are appropriate. The dispositive issue, therefore, is whether the claims asserted by the PDH foreign entities against the Exide foreign entities in state court are "core" bankruptcy claims within the meaning of 28 U.S.C. § 157(b). We accordingly will begin by examining the bases upon which the Bankruptcy Court found that the claims at issue were "core."

## A. Core v. Non-Core Proceedings

In order to evaluate whether a claim is "core," a court must first look to the illustrative list of "core" proceedings found in § 157(b)(2). It must then conduct this Court's two-step test, according to which a claim will be deemed core "if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Halper*, 164 F.3d at 836 (citing *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996)). Each claim within the same cause of action must be analyzed claim by claim and each alone must satisfy this test in order to be considered a core proceeding. *Halper*, 164 F.3d at 836-37. A single cause of action may include both core and non-core claims. The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes "core." *See In re Best Reception Systems, Inc.*, 220 B.R. 932, 947 (Bankr. E.D. Tenn. 1998).

Here, the claims brought by the PDH Foreign Entities are state law claims, respectively, breach of contract, conversion, and unjust enrichment, asserted against non-debtor defendants. None of the claims fall neatly into the list of core proceedings under 28 U.S.C. § 157(b)(2).[6]

---

[6] Under § 157(b)(2), "core proceedings include, but are not limited to":

(continued...)

[6](...continued)
   (A) matters concerning the administration of the estate;
   (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
   (C) counterclaims by the estate against persons filing claims against the estate;
   (D) orders in respect to obtaining credit;
   (E) orders to turn over property of the estate;
   (F) proceedings to determine, avoid, or recover preferences;
   (G) motions to terminate, annul, or modify the automatic stay;
   (H) proceedings to determine, avoid, or recover fraudulent conveyances;
   (I) determinations as to the dischargeability of particular debts;
   (J) objections to discharges;
   (K) determinations of the validity, extent, or priority of liens;
   (L) confirmations of plans;

(continued...)

Even assuming that the claims fall within the list, none – on its face – invokes a substantive right under the Bankruptcy Code.  Each claim is a state law cause of action, sounding in contract and tort.  Each pre-dated the filing of the bankruptcy petition and were filed in state court and, consequently, do not appear to be proceedings that "could arise only in the context of a bankruptcy case."  It is important, however, that a court "not simply [] apply the terms of the statute but rather [] analyze the nature of the underlying claim to determine whether, given constitutional constraints on bankruptcy jurisdiction . . . , that claim should be considered a core proceeding." *Meadowlands Commc'n, Inc. v. Banker's Trust Co.*, 79 B.R. 198 (D.N.J. 1987).

[6](...continued)
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

Here, the Bankruptcy Court determined that the PDH Foreign Entities' claims, although seemingly between non-debtors, were actually claims against the debtor's estate and, therefore, core proceedings under §§ 157(b)(2)(B) and (C). In reaching this conclusion, it adopted two alternative theories. According to the first, the PDH Foreign Entities' claims against the Exide Foreign Entities were, in actuality, claims directly against Exide, over which the Bankruptcy Court had exclusive jurisdiction. As the argument goes, Article 4.2(a) of the Coordinating Agreement – read correctly – limited the PDH entities' right of recovery to an action for indemnification against Exide alone as the sole defendant. Their claims were, therefore, against the debtor and core proceedings pursuant to § 157(b)(2)(B); the counterclaims asserted in the defendants' complaint similarly became core proceedings under § 157(b)(2)(C). According to the second theory, the PDH Foreign Entities voluntarily submitted to the jurisdiction of the Bankruptcy Court by filing proofs of claim in Exide's bankruptcy case. Because the bankruptcy claims allowance process can arise only in the context of a Title 11 bankruptcy and the PDH Foreign Entities filed proofs of claims against the debtor, their claims constituted core proceedings.

On appeal, the PDH Foreign Entities challenge both grounds. First, they assert that their claims in the state court action are strictly between non-debtor plaintiffs and non-debtor defendants and, therefore, non-core. Second, they say, their filing contingent proofs of claim indicates only that the debtor

27

might be called upon if the Exide Foreign Entities are unable to pay; it does not transform the claims into a core proceeding. The Bankruptcy Court, therefore, either was required to abstain or to enforce the forum selection clause and remand the action to state court. The appellees, by contrast, contend that: 1) the Coordinating Agreement designates the debtor Exide as the "sole indemnitor" for claims arising under the sales agreements and, consequently, the PDH Foreign Entities' claims against the Exide Foreign Entities are barred and actually claims against the debtor directly; and 2) the PDH Foreign Entities' filing proofs of claim against the debtor subjects them irrevocably to the jurisdiction of the Bankruptcy Court for the purposes of deciding the cause of action originally filed in state court. The appellees also assert that, even if these other two arguments were unavailing, the claims should be deemed "core," because they are so intertwined with claims against the debtor in the same cause of action.

We will examine each of the grounds for the Bankruptcy Court's decision in turn, as well as appellees' contention that the claims are core because they are "intertwined" with core claims. As the discussion below will make clear, we disagree with each of these bases for finding "core" jurisdiction.

**B. The Coordinating Agreement and the "Sole Indemnitor" Theory**

The Bankruptcy Court and the District Court each relied heavily on Exide's interpretation of the contractual language in the Coordinating Agreement in finding core jurisdiction. Both looked to the language of the Coordinating Agreement and the merits of the Exide defendants' contractual interpretation argument and held that the claims, although ostensibly against the non-debtor Exide Foreign Entities, were actually more properly understood as leveled directly against the debtor, Exide. In so concluding, they found the Coordinating Agreement excludes all indemnification obligations of the Exide Foreign Entities by clearly and unambiguously designating Exide as the sole indemnitor, with the result that the PDH Foreign Entities have no valid claim against the Exide Foreign Entities. Because only the debtor is an appropriate defendant, the PDH Foreign Entities' claims become claims of non-debtors against a debtor, the resolution of which must take place in bankruptcy court.

On appeal, the PDH Foreign Entities argue that they did not have a fair opportunity to respond to this merits argument as the extant court rules provided them no right of reply. Del. U. S. Bankr. Ct. L.R. 9006-1(d)(2003). They also contend that, because their motion to remand or abstain was a procedural and jurisdictional motion which did not present the issue of contract interpretation, the Bankruptcy Court's decision on the merits of

29

their claims against the Exide Foreign Entities took them by surprise. According to the appellants, the Court erred in considering the merits of Exide's interpretation of the Coordinating Agreement and should have confined itself to the jurisdictional issues presented, instead of reaching any issues regarding the claims and defenses of the parties.

In response, the Exide Entities insist that the appellants were not unfairly surprised by the Court's order dismissing their claims against the Exide Foreign Entities because they "had every reason to expect that Exide would address the interpretation of the Coordinating Agreement in its response to the Remand Motion" and because they could have sought leave of the Court to file a reply.[7] They argue that the Court properly

---

[7] The appellees devote a large section of their brief to procedural barriers they allege defeat the PDH Foreign Entities' argument that the Bankruptcy Court's decision on the merits surprised them and improperly prevented them from presenting defenses. They alternately contend that the appellants waived the argument, endorsed the Bankruptcy Court's order and are estopped from challenging it, and are precluded from challenging it because it did not dispose of their claims.

We are not persuaded. As to waiver, the appellants repeatedly objected to the Bankruptcy Court's decision as having ambushed and surprised them. They raised the argument before the Bankruptcy Court on reconsideration and the District Court on appeal and preserved it for our review.

(continued...)

reached the merits and correctly concluded the relevant contract language was clear and unambiguous.

Given the requirement that a court carefully evaluate every claim individually to determine if it is "core," "non-core," or unrelated to the bankruptcy case, we agree with the Exide appellees that both the Bankruptcy Court and the District Court correctly decided that the issue of the Coordinating Agreement's interpretation had to be resolved in order to decide the motion

---

[7](...continued)

Equally lacking in merit is the Exide Foreign Entities' theory that appellants should be estopped from challenging the 2003 Order because their counsel suggested the language used therein and therefore endorsed it. The Bankruptcy Court issued its ruling at the conclusion of the hearing on the motion to remand or abstain and simply requested that counsel draft the order to memorialize its decision. The fact that appellants' counsel helped draft the order to reflect accurately the Court's ruling does not estop appellants from challenging the order.

As to whether the order disposed of the PDH Foreign Entities' claims, it states clearly that "the foreign Pacific Dunlop entities have no right of recovery against the non-debtor Exide entities." App. 24. Although the Exide Foreign Entities' argument that the order did not represent an allowance or disallowance of the PDH Foreign Entities' proofs of claim against debtor Exide's estate is technically correct, it is irrelevant as to whether the order was dispositive as to the PDH Foreign Entities' claims against the Exide Foreign Entities.

to abstain or remand.  A determination as to whether the PDH Foreign Entities' claims had to proceed against the debtor alone was necessary to the disposition of the motion.  However, we believe that both courts erred in concluding that the Coordinating Agreement was unambiguous.

Indeed, the contractual provision at issue is anything but clear.   Article 4.2(a), entitled "Indemnification by Buyer," delineates the obligations of "Buyer" to PDH USA and the PDH Foreign Entities ("Seller" and "International Sellers," respectively) as follows:

> (a) Subject to Sections 4.2(b), 4.2(c), and 4.2(d), Buyer agrees to indemnify and hold Seller and the International Sellers and their Affiliates harmless from and against any and all Losses and Expenses incurred by Seller or the International Sellers and their Affiliates in connection with or arising from:
>
>> (i) any breach by Buyer of any of its covenants or agreements in the Sale Agreements or in this Agreement;
>>
>> (ii) any breach of any warranty or the inaccuracy of any representation by Buyer contained in the Sale Agreements, . . .; or

32

> (iii) any breach by Buyer of any covenant contained in <u>Section 11.1</u> or <u>Section 12.2</u> of the U.S. Agreement or the corresponding provisions in the other Sale Agreements.

App. 578-79. The provision does not define "Buyer" to mean only Exide nor does it use the term "sole indemnitor" or establish that Exide would be exclusively a proper party for any claims. For the purposes of the Coordinating Agreement, the term "Buyer" is in fact to mean "Buyer and/or (as the context may require) any International Buyer." App. 567.

The Bankruptcy Court and the District Court, however, reasoned that Amendment No.1 to the Coordinating Agreement clarified the provision and unambiguously designated Exide as the "sole indemnitor" and the only proper party for any breach of the sales agreements. After the amendment, subsection (i) read: "any breach by Buyer *or, for the sake of clarification, any International Buyer* of any of its covenants or agreements in the Sale Agreements or in this Agreement" (new inserted language emphasized). The remaining language in 4.2(a) was unchanged.

Based on the amendment, the Bankruptcy Court held there was no ambiguity in 4.2(a) and Exide was unambiguously "solely liable for the asserted breaches." App. 103. It reasoned,

33

I reach this conclusion, largely as a result of Amendment number 1, where the parties specifically chose to include language which addressed the very issue of what the buyer should mean in that subsection, and it strikes me that there's no other reasonable inference to be drawn from the making of that amendment other than the parties intended to make that clarification with respect to section 4.2(a) small Roman "i" . . . . That's why I make that conclusion. This results in making Exide solely liable for the asserted breaches . . . .

*Id*. Its order similarly provided:

The Court finds that Section 4.2(a) of the Coordinating Agreement as modified by Amendment No.1 of the Coordinating Agreement is unambiguous, that Debtor Exide is the sole indemnitor thereunder, and that consequently the foreign Pacific Dunlop entities have no right of recovery against the non-debtor Exide entities.

App. 23-24. Faced with the PDH Foreign Entities' motion for reconsideration, the Bankruptcy Court further reasoned that:

34

By virtue of Amendment No. 1, the parties specifically and deliberately carved out only one clause of Section 4.2(a) to "clarify." The other parts of Section 4.2(a) remained unchanged. Therefore, the only reasonable inference that arises from Amendment No. 1[] is that the parties intended that the term "Buyer," as used in the remainder of Section 4.2(a), means only Exide Corporation.

App. 36. On appeal from the Bankruptcy Court's order, the District Court agreed with this conclusion.

This was error. Amendment No.1 does not make clear that Exide is the sole indemnitor under the Coordinating Agreement. Even after the amendment, Article 4.2(a) does not unambiguously state that only one of the numerous contracting buyers assumed indemnification obligations. Nothing in the agreement indicates that the sole recourse of the PDH Foreign Entities is against Exide or provides a waiver of rights as against the non-debtor Exide entities. No amendment provided that the term in the heading or first phrase of 4.2(a) should no longer be defined as "Buyer and/or . . . International Buyer."

We find illogical the Bankruptcy Court's assertion that the "only reasonable inference" from the amendment is that "Buyer" means only Exide in the other subsections of the provision. It simply does not follow that, because the

35

amendment clarified that the term "Buyer" in subsection 4.2(a)(i) meant Exide or one of the Exide Foreign Entities, it also established that "Buyer" used elsewhere in 4.2(a) unambiguously meant only Exide. In fact, "Buyer" as used in other subsections of Article 4.2(a) is more reasonably read to mean both Exide and the Exide Foreign Entities. Subsection (iii), for instance, provides as an event for which the sellers will be indemnified "any breach by Buyer of any covenant contained in Section 11.1 or Section 12.2 of the U.S. Agreement or the corresponding provisions in the other Sales Agreements." App. 579. The reference to "Buyer" here could mean only both Exide *and* the Exide Foreign Entities because Exide was not a party to the "other Sales Agreements" and could not, therefore, have breached any covenants therein. Thus, "Buyer" has to mean Exide *and* the Exide Foreign Entities. The language of subsection (ii) suggests a similar interpretation.

Accordingly, the Bankruptcy Court erred in concluding that the Coordinating Agreement unambiguously designates the debtor as the "sole indemnitor" and only proper party to the PDH Foreign Entities' claims.

This error was magnified by the Court's somewhat precipitous consideration of this important and dispositive issue. The Court gave no notice to the parties that it would decide this issue as to the meaning of the agreement at the hearing. The PDH entities had no right to reply to Exide's merits argument. Yet, at the very outset of the hearing, the Court stated that it

36

considered the claims to be "core."  It, in essence, credited the defendants' argument before PDH's counsel had even had an opportunity to address the issue.

In so doing, the Court failed to provide the PDH Foreign Entities with adequate notice and opportunity to present arguments regarding the proper interpretation of the contract under Illinois law.  Prior to the hearing, neither party had even researched Illinois law applicable to the presentation of extrinsic evidence or the interpretation of the contract.  Counsel for PDH protested that the Exide Foreign Entities had acknowledged that they could be held liable under the Coordinating Agreement and perhaps waived the "sole indemnitor" theory, saying,

> I should point out that there was in the State Court in the first complaint an answer filed by the Exide entities collectively.  And in the answer, which I have and can submit also - and I don't think there would [be] any dispute about that, it's a document – there's no defense asserted.  You can't sue us, the foreign entities; it's not in there.  They didn't raise that.  They didn't raise that for a good long time . . . in the litigation in Illinois.  Why not?  Because they understood that there was a right to sue them there. So that's another factor by way of the behavior of the parties to show the understanding and their intent.

37

App. 73. He further noted that Exide's counsel did not disagree that the Exide defendants' answer and counterclaim in state court failed to raise the sole indemnitor theory asserted before the Bankruptcy Court.[8] The Bankruptcy Court had not yet received the pleadings from Illinois state court and never even addressed this argument.

The PDH Foreign Entities should have had the opportunity to pursue their contention that they were entitled to sue their respective contracting Exide Foreign Entities based on Illinois state law and the contracting parties' understanding of the Coordinating Agreement. In their motion for reconsideration, the PDH Foreign Entities urged the Court "to reconsider its decision not to consider any extrinsic evidence, its apparent decision that there was not even a latent ambiguity in the agreements at issue between the parties, and its narrow interpretation of a portion of Amendment No. 1 to the

---

[8] At the hearing with respect to the motion for reconsideration, counsel made this point again. He said, "it's not true that these issues were presented in the Illinois proceedings. There was no – in fact, by Schaff and Weiss, the predecessor's counsel, there was no argument made in the Illinois State Courts at any time by them that Pacific Dunlap [sic] Entities could not go against the foreign entities. That was an argument that was created later by later counsel, and that's another reason why it shows that they didn't intend it or they would have raised that right at the start." App. 120.

Coordinating Agreement . . . ." App. 1435. They argued that Illinois law supported consideration of extrinsic evidence and they raised the defenses of mutual mistake and latent ambiguity as well. At the hearing on the motion, counsel for PDH urged the Court to reconsider its decision because the motion for remand had not presented the contractual interpretation issue on which the Court based its decision and he had not been prepared to argue the issue and fully develop defenses. Yet, in ultimately denying reconsideration 18 months later, after Exide's bankruptcy plan had been confirmed, the Bankruptcy Court dismissed this argument as "new legal theories that could have been raised previously." App. 37.

Because the Court acted precipitously, it failed to permit the PDH Foreign Entities to challenge Exide's proposed interpretation of the Coordinating Agreement. Based on its holding that the relevant provision was unambiguous, it also refused to consider extrinsic evidence. Accordingly, although we now reverse the Court's determination that Exide is unambiguously the sole indemnitor, we cannot evaluate the contract interpretation on its merits because the record was not developed in the Bankruptcy Court. While the Court correctly determined that an analysis of the indemnification provision in the Coordinating Agreement was necessary to determine whether the PDH Foreign Entities' claims were actually directed against the debtor and therefore core, it erred in concluding that the provision was unambiguous and failing to allow extrinsic evidence to be introduced. *See, e.g.*, *Farm Credit Bank of St.*

39

*Louis v. Whitlock*, 144 Ill.2d 440, 447, 581 N.E.2d 664, 667 (Ill. 1991) (noting that when a contract "is capable of being understood in more sense than one," parol evidence is admissible).

We will, therefore, remand in order to permit the Bankruptcy Court to evaluate the issue more thoroughly. Upon remand, the Court should allow the parties to brief the issue of whether the Coordinating Agreement makes Exide solely liable for all of the PDH Foreign Entities' claims, to present extrinsic evidence, and to develop the evidentiary record. In evaluating whether the claims are core proceedings, the Court should also exercise care to analyze each claim individually.[9] We note that, although, as the Exide Foreign Entities point out, the PDH Foreign Entities did not specifically address this issue in connection with their motion to remand or abstain, they had no right to file a reply. They should be permitted to respond to it on remand.

---

[9] For example, the PDH Foreign Entities have argued that, even if Exide were the sole indemnitor for the breach of contract claims subject to the contract remedy provisions of the Coordinating Agreement, the conversion claims stand apart and can be asserted against the Exide Foreign Entities according to Illinois law. We do not comment on the merits of this contention, but simply note that it may be necessary to address it even if the Bankruptcy Court concludes that the breach of contract and unjust enrichment claims are core proceedings.

### C. Proofs of Claim and Core Proceedings

Although we hold that the Bankruptcy Court erred and should consider anew the meaning of the Coordinating Agreement, we must also address the second, alternate and potentially dispositive ground upon which the Bankruptcy Court and District Court relied–namely, that the PDH Foreign Entities' filing proofs of claims in Exide's bankruptcy case rendered their claims against the Exide Foreign Entities core proceedings.

Section 157(b)(2)(B) provides that "core" proceedings include "allowance or disallowance of claims against the estate." Both courts reasoned that, by filing a proof of claim in the debtor's bankruptcy case, the PDH Foreign Entities invoked the allowance process and their claims became core. We could accept this reasoning if it were premised upon the Coordinating Agreement's designation of Exide as the only proper party to the PDH Foreign Entities' claims so that the subject matter of the proofs of claim is the same as that of the state law action. However, the Bankruptcy Court suggested that, whenever a proof of claim is filed by a claimant in the debtor's bankruptcy case, whatever claims are referenced therein become core proceedings under 28 U.S.C. § 157(b)(2)(B). Even before considering the "sole indemnitor" argument, the Bankruptcy Court stated, "it's clear to me that by virtue of the filing of the Proofs of Claim that in large measure the matters before me are core . . . ." App. 49. On appeal, the District Court similarly expressed a belief that by filing proofs of claim against the

debtor, the PDH Foreign Entities were precluded from proceeding against the non-debtor defendants. It stated, "it seems to me that . . . if they hadn't filed cont[ingent] proofs of claim in bankruptcy, that, truly, the Bankruptcy Court would not have had necessarily jurisdiction over this dispute so long as there wasn't any recourse to the debtor." App. 150. It then concluded that, "when the PDH Foreign Entities filed their [four] proofs of claim against the Exide bankruptcy estate, they irrevocably consented to have their claims heard and decided by the bankruptcy court." App. 20. It is this proposition that we must now examine.

On appeal, the PDH Foreign Entities argue that their filing of contingent proofs of claim in the debtor's bankruptcy case does not establish that claims against non-debtors constitute "core" proceedings. The proofs of claim were for contribution or indemnification from Exide, contingent on securing a judgment against the Exide Foreign Entities and their not being able to pay it, and, while they might have submitted the PDH Foreign Entities to the jurisdiction of the Bankruptcy Court, they did not render the claims against the non-debtor Exide defendants "core."[10]

_____

[10] We note that it is undisputed that, should the PDH Foreign Entities secure a judgment against the Exide Foreign Entities and these entities prove unable to pay, their contingent proofs of claim against the debtor should be determined or estimated by
(continued...)

42

In response, the Exide Foreign Entities urge us to affirm the Bankruptcy Court's decision, contending that the filing of proofs of claims against the debtor rendered the PDH Foreign Entities' claims textbook "core" proceedings. The contingent language within the proofs of claims, they say, has no bearing on the Bankruptcy Court's jurisdiction.

To address these arguments properly, we must first clarify the effect the filing of a proof of claim in a debtor's bankruptcy has on the jurisdiction of the bankruptcy court over claims against non-debtors. As the following explains, we believe the case law is clear that the filing of a proof of claim may cause claims against non-debtors to be deemed "related to"

---

[10](...continued)
the Bankruptcy Court. *See also Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (holding that when a party submits a proof of claim, it "trigger[s] the process of 'allowance and disallowance of claims,'" and thereby is consenting to jurisdiction of the bankruptcy court to make a final decision as to its claim) (citing *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989)). The PDH Foreign Entities acknowledge that the Bankruptcy Court has core jurisdiction over its proofs of claim against Exide itself. Appellant's Br. 41; Reply Br. 17. The consent to jurisdiction, however, is limited to claims against the debtor itself, not claims against non-debtors. *See* 3 Collier on Bankruptcy ¶ 362.03[3][4] (15th ed. 2005) (noting that when one defendant files a bankruptcy petition, the suit may proceed against non-debtor co-defendants).

proceedings, but will not result in their being considered "core" proceedings.

We agree, as Exide observes, that "it is axiomatic that filing a proof of claim triggers the claims allowance process under 11 U.S.C. § 501 et seq., which, by its very nature, is a "core" proceeding that can arise *only* in a title 11 case." Appellee's Br. 21; *see also In re Argus Group 1700, Inc.*, 206 B.R. 737, 747-48 (Bankr. E.D. Pa. 1996) ("Debtors' proposition that the filing of a proof of claim in bankruptcy transforms a pre-petition state law claim which was filed in state court before the bankruptcy into a core proceeding is sound."). Indeed, it has long been black letter law that

> The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy. Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim.

44

*Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987); *see also In re Continental Airlines*, 125 F.3d 120, 131(3d Cir. 1999) (citing and following *Wood*).

Nonetheless, the case law belies the assertion that, when a plaintiff files a proof of claim in a debtor's bankruptcy case, it creates core bankruptcy jurisdiction over claims against non-debtor defendants as well. For example, in *Holiday RV Superstores, Inc.*, plaintiffs brought state law claims of fraud, breach of fiduciary duty and successor liability against the debtor's principal and successor, but did not name the debtor. 362 B.R. 126 (D. Del. 2007). Although one of the plaintiffs filed a proof of claim, which included a copy of the complaint, the court held that it established only that the plaintiffs "may have a claim against someone other than the estate for the same claim" and did "not transform a non-core proceeding into a core proceeding." *Id*. at 129. Similarly, in *CIT Communications Financial Corp. v. Level 3 Communications, LLC,* plaintiff's state court action against non-debtors, asserting breach of contract, unjust enrichment, and conversion arising from an equipment lease the defendants had purchased from the debtor, was found to be "unrelated" to the bankruptcy case. 483 F. Supp.2d 380 (D. Del. 2007). Despite the defendants' assertions that the debtor was the responsible party whom they would need to implead and the plaintiff's filing a proof of claim that concerned the same lease, the court rejected the defendants' jurisdictional argument because "plaintiffs are alleging two separate contractual breaches, one attributable to the Debtors

(before they sold their assets), and the other for defendants' subsequent, *independent* failure to make the Monthly Payments to plaintiff after purchasing those assets." *Id.* at 388.

Exide, however, claims our decision in *Travellers Int'l AG. v. Robinson*, 982 F.2d 96 (3d Cir. 1992), dictates that because the PDH Foreign Entities filed proofs of claim, their claims are "core" proceedings. We disagree. In *Travellers*, we held that "[w]here . . . a creditor has filed a claim, even though the claim is couched in protective language and is contingent, that creditor has submitted to the bankruptcy court's equitable jurisdiction and waived any Seventh Amendment right to a jury trial." *Id*. at 100. Our decision, however, was limited to "[t]he sole legal question . . . [of] whether a contingent proof of claim filed against a bankrupt estate, arising from a judgment in favor of a creditor . . ., *subjects the creditor corporation to the equitable jurisdiction of the bankruptcy court*." *Id.* at 97 (emphasis added). We did not purport to do away with our traditional analysis, nor did we indicate that filing a proof of claim renders claims between non-debtors "core."

We can find no authority to support Exide's broad assertion as to the impact of filing proofs of claim. We agree with the appellants that, as a general rule, "actions asserted by those plaintiffs who filed actions against non-debtor parties exclusively, regardless of whether they filed a proof of claim," are "presumptively non-core." *In re Best Reception Systems*, 220 B.R. at 947; *accord In re Harrah's Entm't, Inc. Sec. Litig.*,

46

Civ. A. No. 95-3925, 1996 WL 684463, *3 (E.D. La. Nov. 26, 1996) ("While . . . [*Langenkamp*] might stand for the proposition that plaintiffs have waived their jury trial right against ... [the debtor] by submitting a proof of claim in the . . . [debtor's] bankruptcy proceedings, . . . [*Langenkamp*] do[es] not stand for the broader proposition that plaintiffs have waived their jury right in a non-core proceeding . . . against non-debtor defendants simply by filing a proof of claim against a debtor in a related bankruptcy case); *In re Argus Group*, 206 B.R. at 748 (rejecting debtors' argument that the plaintiff's proofs of claims filed in their bankruptcy cases transformed his pre-petition state law causes of action against the debtor's operating entity which was not in bankruptcy into a "core" proceeding).

The proposition that a contingent proof of claim against a debtor for contribution or indemnification somehow changes the analysis, rendering state court claims against non-debtors "core," similarly receives no support in the case law. *See, e.g, Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, No. 04 Civ 708(GEL), 2004 WL 1048239, *2 (S.D.N.Y. May 7, 2004) ("Even if the proofs of claim filed by the . . . plaintiffs in the Jones bankruptcy render their claims against Jones 'core' . . ., they have no effect on the claims against the other defendants [or] the many cross-claims among defendants other than Jones . . ., all of which are clearly non-core."); *Hickox v. Leeward Isles Resorts, Ltd.*, 224 B.R. 533, 538 (S.D.N.Y. 1998) (finding related to jurisdiction where "plaintiff's suit against defendant over the promissory notes may 'conceivably' affect the

47

administration of the debtor's estate" because debtor served as guarantor of the defendant's loan and proofs of claim had been filed); *I.G. Davis v. Merv Griffin Co.*, 128 B.R. 78 (Bankr. D.N.J. 1991) (finding related to jurisdiction where a proof of claim filed by non-debtor defendant claimed he was entitled to indemnification by debtor). In *Davis v. Life Investors Insurance Company of America*, the court considered and rejected an argument like the one Exide now advances. 282 B.R. 186 (S.D. Miss. 2002). There, Life Investors, a non-debtor defendant in a state court action, attempted to establish "core" bankruptcy jurisdiction over the state court cause of action because it had an alleged contractual right to indemnity from debtor for any judgment the plaintiff might obtain against it and had filed a proof of claim in the debtor's bankruptcy case. *Id*. at 189. The court was not persuaded and held that the case was "not a core proceeding merely because the outcome of this case, if adverse to Life Investors, will result in a claim (or support the existing contingent claim) by Life Investors against [the debtor's] bankruptcy estate which in turn might affect the assets of the estate." *Id*. at 193. In sum, "there is no authority that a party with a contingent claim for indemnification can bootstrap its claim onto the Bankruptcy Court's core jurisdiction." *In re Amanat*, 338 B.R. 574, 581 (Bankr. S.D.N.Y. 2005).

Yet, the District Court stated that our decision in *Pacor v. Higgins* provides just such authority. In concluding that the PDH Foreign Entities' claims were "core," it stated – incorrectly – that *Pacor* stands for the proposition that "a debtor's

48

agreement to indemnify a third party gives rise to jurisdiction over nonbankruptcy controversies with that third party, especially where [it] has filed a claim against the debtor." App. 22 (citing *Pacor*, 743 F. 2d at 995). This is not accurate. *Pacor* clearly holds that in the event of such an indemnification obligation, *"related to"* jurisdiction might exist. To the extent that the filing of a proof of claim against a debtor who has an obligation to indemnify is relevant, it is so because it "transforms the improbable into the conceivable," thereby rendering the underlying claims involving non-debtor indemnitees related to the bankruptcy case – *not core*. *In re Salem Mills, Inc.*, 148 B.R. 505, 510 n.9 (N.D. Ill. 1992) (observing that "[a]bsent the filing of a proof of claim involving a third-party indemnification action, it is unknown whether the original indemnitor will assert a claim if prevailing"); *I.G. Davis*, 128 B.R. at 99 ("Without doubt, the filing of a proof of claim [asserting a right to indemnification] and consequently the demand to share in the pro rata share of distribution of the estate in connection with [plaintiff's] action has some effect on debtor's estate and its rights, liability and freedom of action."). Accordingly, claims between non-debtors may be related to a bankruptcy case, but generally do not qualify as core proceedings under 28 U.S.C. § 157(b). *See, e.g., Pacor*, 743 F.2d at 994-95; *In G-I Holdings, Inc.*, 278 B.R. 376 (Bankr. D.N.J. 2002); *In re Federal-Mogul Global*, *supra*; *In re Athos Steel and Aluminum, Inc.*, 71 B.R. 525 (Bankr. E.D. Pa. 1987).

49

This case does not differ in any meaningful way from the cases referenced above in which there were state court claims against non-debtors, proofs of claim filed, and a duty of the debtor to indemnify, and the claims were found to be non-core proceedings.[11] Here, the PDH Foreign Entities filed pre-petition state law causes of action exclusively against the Exide Foreign Entities, making the claims at issue strictly between non-debtors. The proofs of claim submitted against Exide are separate from the right to proceed against the non-debtor foreign entities and were filed in light of an imminent claim bar date. The proofs of claim do not assert the state law causes of action against Exide,

---

[11] Although Exide argues that this case is not like the indemnity cases and cites other cases, its citations are unpersuasive: some involved state lawsuits and proofs of claim where the debtor was the only defendant, *In re S.G. Phillips Constr.*, 45 F.3d 702 (2d Cir. 1995); others resulted in decisions that the claims fell within the bankruptcy court's purview because they were "related" to a bankruptcy action, not because they were "core" proceedings, *In re Argus Group*, *supra*, and still others had a result that actually supports the PDH Foreign Entities' position. For instance, Exide cites *In re Best Reception Systems*, as establishing that the PDH Foreign Entities' became core when the proofs of claim were filed, when in fact the court in that case held that, although the claims against the debtor were core given the filing of proofs of claim, the actions "against non-debtor parties asserted by those plaintiffs who have filed a proof of claim and named the Debtor as a defendant" were non-core. 220 B.R. at 944.

but rather assert a right to collect from Exide, should the PDH Foreign Entities win a judgment that the Exide Foreign Entities are unable to satisfy. They are essentially contribution or indemnification claims where the claimants are looking to the non-debtors for payment in the first instance and are clearly different from the breach of contract, conversion, and unjust enrichment claims asserted against the Exide Foreign Entities in state court. The language of the proofs of claim filed make apparent the distinction, noting their position that each of the Exide Foreign Entities "is primarily liable for its breaches, and that the Debtor is secondarily liable to the extent that [the individual Exide Foreign Entity] is unable to satisfy" the judgment against it. *See, e.g.*, App. 500-01.

As the PDH entities note, only by erasing the distinction between the PDH Foreign Entities' state court claims against the Exide Foreign Entities and their proofs of claim against the Exide estate, is Exide able to argue that the PDH Foreign Entities state law claims are core. To follow Exide's argument to its logical conclusion, whenever a plaintiff sues multiple defendants and one files for bankruptcy, if that plaintiff files a proof of claim against the debtor, his or her claims against the remaining co-defendants would become "core" proceedings as well. We know this is not the case. In the context of mass tort or securities cases, involving large numbers of defendants and indemnity relationships, courts routinely find that the remaining

51

claims between non-debtors are non-core or even entirely unrelated to the bankruptcy case.[12]

Therefore, we now hold that, by filing proofs of claim in Exide's bankruptcy proceeding, the PDH Foreign Entities have not transformed their state law claims against non-debtor defendants into core matters that the Bankruptcy Court must resolve. The claims asserted in the PDH Foreign Entities' proofs of claim are not the same as the claims against the non-debtor defendants in the state court action. *See In re Argus Group*, 206 B.R. at 748. The PDH Foreign Entities' filing of contingent proofs of claim does not render the dispute between non-debtor plaintiffs and defendants "core." The proofs of

---

[12] *See In re Combustion Eng'g,* 391 F.3d at 230-31 (finding no related to jurisdiction over claims against debtor's co-defendants in large asbestos litigation despite arguments that the bankruptcy estate could be affected by future contribution or indemnification claims); *Transamerica Financial Life Ins. Co. v. Merril Lynch & Co., Inc.*, 302 B.R. 620 (N.D. Iowa 2003) (holding that, because Enron was not named as a defendant and no third party complaint for indemnification had been filed, claims against Enron bankers and underwriters were not related to the bankruptcy but simply between non-debtors, despite the plaintiffs' filing proofs of claim); *In re Federal-Mogul Global*, *supra* (holding that there was not even "related to" jurisdiction over asbestos litigation between non-debtors, based upon possibility that some defendants might assert indemnity claim against debtors).

claim for indemnification against the debtor merely demonstrate that the claims against the non-debtor Exide entities are "related to" Exide's bankruptcy case as they "could conceivably" have an effect on the bankruptcy estate. *Pacor*, 743 F.2d at 994; *Halper*, 164 F.3d at 837 (noting that "[c]ertainty or likelihood is not a requirement").[13]

---

[13] Courts often have concluded that claims between non-debtors were "related to" proceedings where there was a contractual duty to indemnify and a claim for indemnification or proof of claim for indemnification. *See In re Resource Technology Corp.*, No. 03 C 5785, 2004 WL 419918, *4 (N.D. Ill. Feb. 13, 2004) (holding that a claim between non-debtors was related to by virtue of the defendant's having filed a proof of claim expressing his intention to seek indemnification from the debtor, which "ultimately may affect the allocation of property among [the] creditors"); *Life Investors Ins. Co.*, 282 B.R. at 190 (holding that in light of non-debtor defendant's contractual right to indemnity from debtor for any judgment the plaintiff might obtain and its filing of a proof of claim, the claims between non-debtors were "related to" the bankruptcy); *In re Harrah's Entm't*, 1996 WL 684463 at *2 (in a suit between non-debtors, "the presence of an indemnification agreement between several of the . . . defendants and debtor . . . means that any adverse outcome in this suit against the . . . defendants could conceivably have an effect on the administration of the bankruptcy estate."); *Merv Griffin Co.*, 128 B.R. at 99 (finding that contractual right to indemnification from debtor establishes

(continued...)

Accordingly, if, after remand, the Bankruptcy Court decides that, based on the Coordinating Agreement, Exide is the only proper party against whom the PDH Foreign Entities may seek a remedy, then the claims would be "core" proceedings. If, however, the Court decides that the Coordinating Agreement permits the PDH Foreign Entities to pursue their claims against the non-debtor defendants, the claims will be not only non-core, but also subject to mandatory abstention[14] and enforcement of

---

[13](...continued)
"related to" jurisdiction); *Philippe v. Sharpe*, 103 B.R. 355, 358 (D. Me. 1989) (deciding it had "related to" jurisdiction over claims between non-debtors where "apparently unconditional duty to indemnify" would result in automatic liability on the part of the debtor).

[14]   In "non-core" proceedings, courts must abstain from hearing a claim if (1) the proceeding is based upon state law causes of action; (2) the causes of action are "related to" a case under title 11, but do not "arise under" title 11 or "arise in" a case under title 11; (3) federal courts would not have jurisdiction absent its relation to a bankruptcy case; (4) an action is "commenced" in a state forum of appropriate jurisdiction; and (5) the action can be timely adjudicated in the state forum. *Stoe*, 436 F.3d at 213 (summarizing requirements under 28 U.S.C. § 1334(c)(2)).   Here, there is no dispute as to the first four factors. PDH Foreign Entities' claims against the Exide Foreign Entities constitute a state law cause of action commenced in a state forum for which there is no independent basis for federal
(continued...)

54

the agreement's forum selection clause[15] and should accordingly

---

[14](...continued)
jurisdiction other than § 1334(b). As to the fifth factor, the Exide defendants claim that the Illinois State Court will not timely adjudicate the claims. The question is "not whether the action would be *more quickly* adjudicated in [the bankruptcy court] than in state court, but rather, whether the action can be *timely adjudicated* in the state court." *In re Freehand H.J., Inc.,* 2007 WL 1775368, *4 (Bankr. E.D. Pa. June 19, 2007) (*quoting In re Trans World Airlines, Inc.*, 278 B.R. 42, 51 (Bankr. D. Del. 2002) (emphasis in original)). Here, the state court action was moving along expeditiously; the judge had made clear his intent to move the case forward; and the action had been placed in the docket of the Cook County Circuit Court, designed to facilitate the adjudication of commercial disputes. Accordingly, we believe that this action can be timely adjudicated in the state court.

[15] A forum-selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement demonstrates that enforcement of the clause would violate a strong public policy of the forum. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Where the claims at issue are not "core" bankruptcy matters, this rule applies equally to Chapter 11 debtors. *See Diaz Contracting*, 817 F.2d at 1051-53; *In re Kamine/Besicorp Allegany, L.P.*, 214 B.R. 953, 972-74 (Bankr. D.N.J. 1997).

(continued...)

be returned to the Illinois state court for trial.

### D. "Intertwined" Claims and *In re RBGSC Inv. Corp*

Although appellees rely heavily on their sole indemnitor theory, they aver there is yet another ground on which to base a finding of core jurisdiction. They say, "assuming *arguendo* that the PDH Foreign Entities had independent claims against the Non-Debtor Affiliates . . . the Bankruptcy Court still has 'core' matter jurisdiction over the removed State Court Actions" because of the close-knit indemnitor and subsidiary relationships between the parties. Appellee's Br. 27 n.30 (citing *In re RBGSC Inv. Corp.*, 253 B.R. at 379). Urging us to adopt the approach of the district court in *In re RBGSC Inv. Corp.*, they claim that a state court action involving debtors and non-debtors becomes core if the core and non-core claims are "'so intertwined' that merely to 'disentangle' them would be 'co-extensive with a resolution of the merits of the disputes.'" *Id*. The Exide Entities

[15](...continued)
Here, the Coordinating Agreement specifies that the parties will file any suits arising out of the sales agreements to a state or federal court in Cook County, Illinois. If the claims at issue are non-core, this forum selection clause should be enforced.

56

made a similar argument to the Bankruptcy Court, which it seemed to credit.[16]

---

[16] The Bankruptcy Court also attached a great deal of significance to the relative amounts in dispute between PDH USA's claims and the PDH Foreign Entities' claims. It stated, "the magnitude of the dispute is about $20 million, 16 million of which is acknowledged to be sought against Exide alone. Doesn't that make the dispute as between non-debtor entities the tail of the dog?" App. 54. The court suggested that "judicial economy and efficiency" were appropriate factors to consider with regard to the "core" determination. App. 53. This was not correct. *Pacor*, 743 F.2d at 994 (observing that "[j]udicial economy itself does not justify federal jurisdiction"). The test for finding jurisdiction is not a mathematical one that relies on weighing the value of total claims against non-debtors against total claims against the debtor.

The size of the claims, relative to the total bankruptcy estate, may be a consideration in evaluating "related to" jurisdiction. *See, e.g., Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1235 n.10 (3d Cir. 1994) ("It is essentially undisputed that removal pursuant to § 1452 was appropriate because the Phar-Mor/Coopers lawsuit will have a direct and substantial impact on the size of Phar-Mor's asset pool available for distribution to creditors and therefore is 'related to' the bankruptcy case pending in Ohio."). However, here, the size of the claims is relatively insignificant. In Exide's bankruptcy case, the over-6,100 proofs of claims filed in liquidated amounts totaled approximately $4.4 billion (another approximately 1,100

(continued...)

57

Lest the Bankruptcy Court be persuaded by Exide's intertwinement argument on remand, we now consider and reject it.

In *In re RBGSC Inv. Corp.*, the only case Exide cites for the rule that intertwined claims become core, plaintiffs asserted a variety of state court claims, including injunction, specific performance, defamation, and breach of various agreements, arising out of a series of complex business arrangements, against the debtor RBGSC and non-debtor defendants jointly. After RBGSC removed the state court action to bankruptcy court and filed a motion for relief from orders the state court had entered prior to removal, its co-defendants filed similar motions; in response, the plaintiffs moved for abstention and remand. 253 B.R. at 372-73. The bankruptcy court denied the plaintiffs' motion on the ground that their claims against the non-debtor defendants were "core" and essentially claims against the debtor. *Id*. at 373.

The district court on appeal held that:

Where the links between and among the various parties, including the state court plaintiffs and the

---

[16](...continued)
proofs of claim were filed as unliquidated); the contingent proofs of claim filed by the PDH Foreign Entities are – at approximately $9.9 million – the proverbial drop in the bucket.

58

> debtor and non-debtor defendants, are so
> intertwined by virtue of the many agreements
> defining these relationships, we cannot see how
> Appellants' state court claims could be viewed, in
> the wake of the bankruptcy, as anything other than
> a claim on the estate.

*Id*. at 379. Because plaintiffs had asserted state court claims
against RBGSC and the non-debtor defendants jointly, the court
concluded that "identifying claims from the state court
complaint that are not tied to RBGSC would in itself present a
daunting legal task" and, therefore, the claims against the non-
debtors were core proceedings whose determination "would be
co-extensive with a resolution of the merits of the disputes." *Id*.
at 380.

As an initial matter, it strikes us that *In re RBGSC Inv.
Corp.* is distingushable from the present case. Here, instead of
asserting claims directly against the debtor, jointly with other
defendants, each of the PDH Foreign Entities made discrete
claims against each of the non-debtors and did not assert those
claims against debtor or assert joint liability. Indeed, it is simple
to separate the PDH Foreign Entities' claims against the Exide
Foreign Entities from the claims against the debtor, and from
one another, because they are stated separately. Each referenced
separate agreements and was filed against either one or two of
the Exide Foreign Entities.

59

Nonetheless, insofar as *In re RBGSC Inv. Corp.* holds that non-core claims against non-debtors are rendered core because of close business relationships between the debtor and non-debtors or "intertwinement" with a claim against a debtor, it is legally unsound and must be overruled. We reiterate that courts must engage in a claim-by-claim analysis to determine whether a proceeding is core. *Halper*, 164 F.3d at 836-37. Each state court claim removed to bankruptcy court must be considered individually; non-core claims do not become core simply by virtue of being pursued in the same litigation as core claims. Accordingly, the intertwinement theory cannot be sustained.

We note that the *In re RBGSC Inv. Corp.* decision has not received subsequent support among district courts in this circuit or others. *See, e.g.*, *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 119 (N.D. Tex. 2006) (disagreeing with the bankruptcy court that "non-core claims were so intertwined with the other claims in the complaint" that core bankruptcy jurisdiction lay); *Davis*, 282 B.R. at 193 (rejecting defendant's argument that the state court cause of action "is a core proceeding merely because it is 'intertwined with' its indemnity claim")*; In re Winstar Commc'n, Inc.*, 284 B.R. 40, 50 (Bankr. D. Del. 2002) (evaluating claims arising out of a contract between plaintiff and three sellers, two chapter 11 debtors and wholly-owned subsidiary non-debtor, and holding that "the mere fact that there may be common issues of fact between a civil proceeding and

a controversy involving the bankruptcy estate does not bring the matter within the scope of" section 1334(b)).

Accepting the rule that Exide urges would turn virtually every claim contained in an action in which the debtor is one of the defendants and which is later removed to bankruptcy court into a core proceeding. The PDH Foreign Entities cannot be required to have their rights against Exide's non-debtor subsidiaries be determined by the Bankruptcy Court solely because Exide invoked its protection. Adoption of the "intertwinement theory" would cause debtors to

> bring[] every wholly owned subsidiary into every Bankruptcy case regardless of the circumstances and without the safeguards afforded by schedules, statements of financial affairs, notices to creditors, or meetings of creditors . . . [and] could result in debtors and others abusing the system by withholding from Bankruptcy or bringing into Bankruptcy subsidiaries in a revolving door fashion.

*In re Winstar Commc'n*, 284 B.R. at 51. Moreover, permitting core bankruptcy jurisdiction to stretch so far would present serious constitutional questions. *Mirant Corp.*, 337 B.R. at 119 (observing that "[t]he principles announced in *Marathon* would be violated if such an intertwinement theory were to be given effect").

61

Thus, we now conclude that the "intertwinement" theory espoused by *In re RBGSC Inv. Corp* has no place in our "core" jurisprudence.

## IV. Conclusion

As we set forth above, the Bankruptcy Court committed several errors in reaching the conclusion that the claims at issue here are "core" proceedings under 28 U.S.C. §§ 157(b)(2)(B) and (C). The state of the record, however, does not permit us to decide whether the claims can properly be deemed "core."

We, therefore, will VACATE the District Court's Memorandum Order entered on March 22, 2007, and REMAND the case to the District Court with instructions to:

(1) VACATE the decisions of the Bankruptcy Court dated December 11, 2003 (entered December 15, 2003), and June 16, 2005 (entered June 20, 2005), and

(2) REMAND this case to the Bankruptcy Court for proceedings consistent with this Opinion.

_____